**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**Case No.: 1:16-cv-0054**

|  |
| --- |
| **Kay Diane Ansley, Catherine "Cathy" McGaughey, Carol Ann Person, Thomas Roger Person, Kelley Penn, and Sonja Goodman,** |
| **Plaintiffs,** |
| **v.** |
| **Marion Warren, in his Official Capacity as Director of the North Carolina Administrative Office of the Courts,** |
| **Defendant.** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, pursuant to 28 U.S.C. § 2201, seeking a declaration that actions taken by Defendant to use public funds for a religious purpose under the state legislation known as "Senate Bill 2" violates the Establishment Clause of the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and ask this Court to enjoin such conduct and the underlying statute as unconstitutional, allege the following against Defendant:

**PARTIES**

1.      Plaintiffs Kay Diane Ansley and Catherine "Cathy" McGaughey are citizens and residents of McDowell County, North Carolina and are North Carolina taxpayers. Diane and Cathy were married on October 14, 2014 after this Court struck down state laws forbidding their marriage in *General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213-MOC (W.D.N.C.). Diane earned a Bachelor of Science degree from the University of West Georgia in 1983 and a degree from

1

the American Institute for Paralegal Studies in 1993. She previously worked in law enforcement for 22 years and now works for a local physician as a Patient Scheduler and Medical Records Custodian. In 1982, Cathy earned a Bachelor of Science degree from Georgia State University's College of Urban Life in 1982. She currently works for a local physician as a bookkeeper, and also does bookkeeping for two faith-based non-profit groups and a small retail business.

2.      Plaintiffs Carol Ann Person and Thomas Roger Person are citizens and residents of Moore County, North Carolina and are North Carolina taxpayers. Both are legally blind and met at the Governor Morehead School for the Blind in the 1970s and both worked for many years at Industries for the Blind in Winston-Salem. Carol Ann is white and Thomas is African-American. In 1976, two magistrates in Forsyth County refused to marry Carol Ann and Thomas because of the magistrates' religious beliefs against interracial marriage. One of the magistrates read to them from the Old Testament to justify his refusal to marry the Persons, and the other recited the "Our Father" prayer to justify his refusal.  Both magistrates declared that interracial marriage was against God's will and the Bible. In 1978, a federal district court found that the two magistrates had violated the Fourteenth Amendment rights of Carol Ann and Thomas, ordered that their marriage be performed and ordered the magistrates to pay the Persons' legal fees.

3.      Plaintiffs Kelley Penn and Sonja Goodman are citizens and residents of Swain County, North Carolina and are North Carolina taxpayers. They live and work together and are engaged to be married. Plaintiffs Penn and Goodman wish to be married by a magistrate in a civil marriage, untainted by the stigma of animus arising from the recusal of magistrates in their home county.

4.      Defendant Marion Warren (hereinafter "Defendant") is Director of the North Carolina Administrative Office of the Courts ("NCAOC"). The NCAOC manages and oversees the administrative services provided to the Judicial Branch of North Carolina's more than 6,000 employees

2

and hundreds of courthouses and facilities in every county of the state. The Judicial Branch is an equal and distinctively separate branch and core function of government. Defendant, as Director of the NCAOC, is authorized to use public funds for a religious purpose. He is sued in his official capacity under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908) for conduct taken under color of state law that violates the First and Fourteenth Amendments.

## JURISDICTION AND VENUE

5.     The District Court has federal question jurisdiction over the subject matter under 28 U.S.C. § 1331.

6.     Plaintiffs have standing as state taxpayers under *Flast v. Cohen,* 392 U.S. 83 (1968) and its progeny, as they challenge the spending of tax funds by Defendant Warren as approved by the state legislature for the express and primary religious purpose in violation of the First Amendment.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the majority of Plaintiffs live within the Western District; some of the challenged spending under the statute that violates the First Amendment has occurred in the Asheville Division of the Western District; and Defendant Warren's office manages and oversees judicial services provided throughout the state, including every state judicial district located in the Western District.

8.     Further, Defendant Warren's unconstitutional spending is taking place in purposeful defiance of the Order of this Court in a related case involving Plaintiffs Ansley and McGaughey: *General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213-MOC (W.D.N.C.).

## FACTS

**A. The Obligation of Each State's Judiciary to Support and Uphold the United States Constitution is at the Foundation of Our Constitutional Democracy.**

9.     On November 21, 1789, North Carolina became the twelfth state to ratify the newly formed United States to ratify the federal constitution.

3

10.     In ratifying the second clause of Article VI, North Carolina agreed that the federal constitution is the superseding law of the nation that all North Carolina judges must uphold. As stated under Article VI:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

11.     In ratifying the third clause of Article VI, North Carolina further agreed that its public judicial officials "shall be bound by oath or affirmation, to support this Constitution."

12.     On July 4, 1868, North Carolina ratified the Fourteenth Amendment of the federal constitution, which mandates that the State provide each of its citizens the right to equal protection and due process of law.

13.     Thus, since July 4, 1868, all judicial officials in North Carolina have been "bound by oath or affirmation" to support the Fourteenth Amendment.   In 1970, North Carolina rewrote its state constitution. Under Article VI, § 7 of the 1970 North Carolina Constitution, all persons elected or appointed to public office must swear to or affirm the following oath (with emphasis added):

> "I, _____, do solemnly swear (or affirm) that **I will support and maintain the Constitution and laws of the United States**, and the Constitution and laws of North Carolina not inconsistent therewith and that I will faithfully discharge the duties of my office as _____, so help me God."

14.     Defendant Warren has taken this oath of office, as he served for over a decade as a state district court judge.  He now oversees the state court system in which every judge has been required to take this oath.

15.     To further this state constitutional requirement, the North Carolina Legislature set out in N.C.G.S. § 11-7 a required oath for all elected and appointed public officials, including judicial officers. It reads (with emphasis added):

4

"I, (name), do solemnly and sincerely swear **that I will support the Constitution of the United States**; that I will be faithful and bear true allegiance to the State of North Carolina, and to the constitutional powers and authorities which are or may be established for the government thereof; and that I will endeavor to support, maintain and defend the Constitution of said State, **not inconsistent with the Constitution of the United States**, to the best of my knowledge and ability; so help me God."

16.     Defendant Warren has taken this oath of office as well.

17.     N.C.G.S. § 11-11 then sets forth additional oaths for each public official, including an oath for judges to perform the duties of judicial office fairly and impartially.  Defendant Warren has taken that oath as well and knows of the obligation it imposes on all judicial officials who work under his office in this state.

**B.  North Carolina Magistrates are Judicial Officials.**

18.     Under subchapters IV and VI of Chapter 7A of North Carolina's General Statutes, magistrates are judicial officials who preside over certain matters in North Carolina's District Courts.

19.     Under N.C.G.S. § 7A-170, magistrates are required to take the judicial oath of office, consisting of the oath of all public officials set out in N.C.G.S. § 11-7 and the specific oath for judges found in N.C.G.S. § 11-11.

20.     Under N.C.G.S. § 7A-173, a magistrate may be removed from judicial office for the same reasons that apply to all judges of the state's General Court of Justice.

21.     The North Carolina Magistrate Association explains:

The mission of the Magistrate is to protect and preserve the rights and liberties of all of the people, as guaranteed by the Constitution and laws of the United States and North Carolina, by providing a fair, independent and accessible forum the just, timely and economical resolution of their legal affairs.[1]

---

[1] North Carolina Magistrate Association, *Mission Statement*, http://www.aoc.state.nc.us/magistrate/AboutUs/index.htm (last visited Mar. 7, 2016).

5

22. The North Carolina Magistrate Association further states:

> In many instances, a citizen's first contact with the judicial system comes through the office of the magistrate as magistrates are the front-line protection of peoples' constitutional rights.[2]

23. Magistrates are judicial officials empowered by North Carolina law to:

   a. Accept guilty pleas, admission of responsibility and enter judgment for Infractions;
   b. Handle misdemeanor and infractions for cases involving: alcohol; boating offenses; state park/recreational areas; littering offenses; and wildlife offenses (e.g., hunting, fishing, etc.);
   c. Accept written appearances, waivers of trial or hearing and guilty pleas;
   d. Enter judgment and collect fines, penalties and costs;
   e. Issue arrest warrants;
   f. Issue search warrants;
   g. Grant bail or set release conditions (non-capital offenses);
   h. Hear and enter judgments on worthless checks less than $2000;
   i. Conduct initial appearances;
   j. Serve as Child Support Hearing Officers;
   k. Hear small claims complaints and Requests for Assignment;
   l. Administer oaths;
   m. Provide punishment for direct criminal contempt;
   n. Take depositions and examination before trial;
   o. Issue subpoenas and capiases;
   p. Take affidavits for verification of pleadings;
   q. Assign years allowances to surviving spouses and children;
   r. Perform marriage ceremonies;
   s. Take acknowledgment of written contract or separation agreement;
   t. Accept applications for involuntary commitments;
   u. Conduct hearing for driver license revocations;
   v. Validate vehicle towing by law enforcement; and
   w. Validate impounding of vehicles in certain DWI/DWLR charges.

24. Performing marriages is included in this list. Under N.C.G.S. § 7A-292(b)(9), North Carolina has assigned magistrates the power and judicial duty "to perform the marriage ceremony under N.C.G.S. § 51-1."

---

[2] North Carolina Magistrate Association, *About Us*, http://www.aoc.state.nc.us/magistrate/AboutUs/index.htm (last visited Mar. 7, 2016).

25.     Chapter 51 of the General Statutes contains North Carolina's marriage laws. N.C.G.S. § 51-1 authorizes magistrates to solemnize marriages by ceremony, and N.C.G.S. § 51-7 authorizes magistrates to sign marriage licenses and submit them for registration.

26.     These marriages are wholly civil in nature. By statute, there is absolutely no religious component to a magistrate's performance of a marriage ceremony.

27.     Under N.C.G.S. § 14-230, any magistrate who violates the oath of office or willfully refuses to discharge a duty of office is subject to removal from office on a misdemeanor charge.

28.     Defendant Warren overseas and manages the administration of the judicial system and is well aware that magistrates are judicial officers subject to these provisions of law as well as the judicial oath of office.

**C. Amendment One and Corollary Marriage Laws Declared Unconstitutional.**

29.     In September 2011, the North Carolina legislature voted to place on a statewide ballot an initiative, commonly called Amendment One, to amend the North Carolina Constitution to limit marriage to opposite-sex couples and to prohibit the recognition of marriages between same-sex couples.

30.     Chapter 51 of the General Statutes already contained similar limiting provisions.

31.     Many public officials voiced strident support for Amendment One based on a religious belief that the Bible limited marriage to heterosexual couples and that homosexuality was sinful. For example, State Senator James Forrester stated: "The Lord intended for a family to have one man and one woman."[3] State Senator Wesley Meredith stated: "We need to regulate marriage because I believe

---

[3] State Senator James Forrester, Sponsor of Amendment One, *Wedding Bills*, The News & Observer (Mar. 2, 2011), http://www.newsobserver.com/2011/03/02/1022741/wedding-bills.html.

7

that marriage is between a man and woman," and expressed the view that the Bible provides the basis that marriage should be limited to a relationship between a man and a woman.[4]

32.    The Amendment One referendum passed on May 10, 2012, amending the state constitution.

33.    On Friday, October 10, 2014, this Court declared Amendment One, and its corollary provisions in Chapter 51 of the General Statutes, unconstitutional. This Court found that the ban on marriage between same-sex couples violated the Fourteenth Amendment under the Fourth Circuit's decision in *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014). *See General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213-MOC, Doc. 121 (W.D.N.C. Oct. 10, 2014).

34.    This Court entered its order shortly after the Supreme Court denied *certiorari* in *Bostic*.

35.    The President Pro Tempore of the North Carolina Senate and Speaker of the North Carolina House of Representatives sought to intervene in *General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213-MOC, after the Supreme Court denied *certiorari* in *Bostic* and North Carolina's Attorney General stated publicly that he saw no legal basis to defend Amendment One or to appeal this Court's order in light of *Bostic*.

36.    This Court denied that motion to intervene. *See General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213-MOC, Doc. 120 (W.D.N.C. Oct. 10, 2014).

37.    This Court's ruling in *General Synod* led immediately to the issuance of marriage licenses to same-sex couples in North Carolina, as well as the marriage of same-sex couples by magistrates.   Thousands of marriage licenses were issued to same-sex couples in North Carolina, and those couples were married, in the ensuing days, weeks, and months.

---

[4] Paul Woolverton, *N.C. Senate Approves Amendment to Block Gay Marriage*, Fayetteville Observer (Sept. 14, 2011), http://www.fayobserver.com/news/state/article_df7d48cf-1770-5f59-9975-11bc83b05347.html.

38.     On Monday, October 13, 2014, Defendant Warren's predecessor as director of the Administrative Office of the Courts, Judge John W. Smith, issued a directive that "[m]agistrates should begin immediately conducting marriages of all couples presenting a marriage license issued by the Register of Deeds."

39.     On Tuesday, October 14, 2014, General Counsel for the Administrative Office of the Courts issued a legal memorandum stating that magistrates would violate their judicial oath to uphold the United States Constitution if they refused to marry same-sex couples.

40.     On October 14, 2014, the District Court for the Middle District of North Carolina issued an Order and Judgment also striking down Amendment One and corollary marriage laws prohibiting marriage equality. *See Fisher-Borne v. Smith*, No. 1:12-cv-589-WO (M.D.N.C. Oct. 14, 2014); *Gerber v. Cooper*, No. 1:14-cv-299-WO (M.D.N.C. Oct. 14, 2014).[5]

41.     The President Pro Tempore of the North Carolina Senate and Speaker of the North Carolina House of Representatives were allowed to intervene in the *Fisher-Borne* and *Gerber* cases for the limited purpose of lodging an objection and preserving that objection to the district court's application of the *Bostic* case.

42.     Also on October 14, 2014, Michael Crowell, Professor of Public Law and Government, School of Government, University of North Carolina—Chapel Hill, sent an email to all Chief District Court Judges, who supervise the magistrates in their judicial districts, with the subject title: "Magistrates and same-sex marriage."

43.     Professor Crowell wrote, in part, that he was responding to inquiries concerning how to address the issue of "magistrates [who] would prefer not to perform ceremonies for same-sex couples."

---

[5] An amended Order and Judgment striking down Amendment One and related marriage laws were entered the following day in the Middle District cases.

9

44.     After acknowledging the binding effect of this Court's ruling statewide, Professor Crowell wrote, in part, "A magistrate has taken an oath of office to perform the duties of the office and, just like you [District Court Judges], does not get to choose which laws to follow and which not. Everyone would agree that it would not be proper for a magistrate to refuse to marry an interracial couple because the magistrate does not approve of such marriages. The same principle would apply to same-sex couples now. No doubt you can think of lots of other examples of laws which a judge might not approve personally but is obligated to uphold."

45.     Professor Crowell continued: "This is an issue about which people have strong opinions, and magistrates no doubt are divided just as other citizens are. The difference is that magistrates have taken an oath of office and are public officers. They, like you, are required to put their personal feelings aside when necessary. The judicial system could not work if individual officers acted otherwise."

46.     Professor Crowell concluded by stating: "I hope this does not sound preachy or heavy handed, but I do think it is important to remind magistrates of the majesty of their position. They, like you, are judicial officials. They should be proud of the public trust that has been placed in them, in the importance of their office, and the need to sustain the rule of law regardless of the discomfort it causes. In the end the one thing that should make them proudest is being judicial."

47.     The North Carolina Court System posted Professor Crowell's e-mail to the Chief District Court Judges on its website, where it remains as of this filing.[6]

48.     On October 24, 2014, various members of the North Carolina General Assembly, including Phil Berger, President Pro Tempore of the Senate, sent a letter to the Director of the

---

[6] Email from Michael Crowell, Professor of Public Law and Government, School of Government, UNC-CH (Oct. 14, 2014), http://www.nccourts.org/News/Documents/Marriage/crowell_email_magistrates_and_same_sex_marriages.pdf (last visited Mar. 7, 2016).

Administrative Office of the Courts. The members of the General Assembly voiced their criticisms of the NCAOC's directives concerning the implementation of marriage equality, as outlined in a memorandum issued by the NCAOC on October 14, 2014.[7] The objecting members of the General Assembly "encourage[d] [the NCAOC] to revise the memorandum to include a comprehensive and correct statement of federal and state law on the doctrine of reasonable accommodation and management flexibility."[8]

49.　　On November 5, 2014, the Director of the NCAOC responded to Senator Berger's letter, writing, among other things:

> I want to assure you and all of the people of our state that I respect our magistrates who hold sincere and deep religious beliefs that have placed them in conflict with the duties of their appointed judicial office. Those who have resigned demonstrated their thoughtful choices in resolving their moral dilemmas. At the same time, other magistrates with equally sincere and deep religious beliefs recognize a quite clear distinction between marriage as a civil ceremony conferring legal status, and marriage as a religious institution quite apart from temporal concerns.[9]

50.　　On March 2, 2015, Smith announced he was retiring, effective May 1, 2015. Warren replaced him.

51.　　On information and belief, some magistrates, including magistrates from counties within the Western District, resigned in the face of this Court's Order and the directive from Defendant Warren's predecessor at the Administrative Office of the Courts rather than uphold their oath of office and perform marriages for same-sex couples.

---

[7] Memorandum from Pamela Weaver Best to Superior Court Judges, Chief District Court Judges, District Court Judges, Clerks of Superior Court, Magistrates (Oct. 14, 2014), http://www.nccourts.org/News/Documents/Marriage/legal-counsel-memo-same-sex-marriages-UPDATE.pdf (last visited Mar. 7, 2016).

[8] Letter from Phil Berger et al. to Hon. John W. Smith (Oct. 24, 2014), http://christianactionleague.org/wp-content/Republican-Senators-Letter-to-AOC-Smith.pdf (last visited Mar. 7, 2016).

[9] Letter from Judge John W. Smith to Senator Phil Berger (Nov. 5, 2014), http://www.nccourts.org/News/Documents/Marriage/Response-on-Marriages-by-Magistrates.pdf (last visited Mar. 7, 2016).

**D. North Carolina Adopted Senate Bill 2 in Defiance of These Court Rulings.**

52.     On January 28, 2015, the President Pro Tempore of the Senate filed the second bill of the new legislative session: a proposed law to allow magistrates to opt out of performing marriages on religious grounds (and also to allow assistant and deputy registers of deeds to opt out of issuing marriage licenses).

53.     The long name of the bill read (with emphasis added):

> A BILL TO BE ENTITLED AN ACT TO ALLOW MAGISTRATES AND REGISTERS OF DEEDS TO RECUSE THEMSELVES FROM PERFORMING DUTIES RELATED TO MARRIAGE CEREMONIES **DUE TO SINCERELY HELD RELIGIOUS OBJECTION**.

54.     The official "short title" of the bill was "Magistrates [sic] Recusal of Civil Ceremonies."

55.     The bill became known as "Senate Bill 2" based of the filing number.

56.     Section 1 of the proposed bill created a new statute, N.C.G.S. § 51-5.5, that would grant magistrates the right to recuse themselves from conducting any marriages, and separately would grant assistant and deputy registers of deeds the right to recuse themselves from issuing marriage licenses, for six-month intervals, based upon "any sincerely held religious belief."

57.     N.C.G.S. § 51-5.5 permits recusal based on "any" religious belief regarding marriage, which could include religious opposition to marriage between two men, two women, two people of different faiths, or, like Plaintiffs Carol Ann and Thomas Person, two people of different races.

58.     The statute's obvious purpose and timing, however, were in response to this Court's ruling, and the effort to exempt magistrates who oppose constitutionally-protected, equal marriage rights for gay and lesbian citizens from their mandatory judicial oath to support and uphold the constitution.

12

59.	The statute allowed magistrates to refuse to support the Fourteenth Amendment regarding the right to marry but still remain judicial officials, notwithstanding the requirements imposed of Article VI of the United States Constitution and Article VI, § 7 of the North Carolina Constitution that all judges be "bound" to uphold the federal constitution.

60.	To achieve that end, Senate Bill 2 also amended N.C.G.S. § 14-230 to add subsection (b) to expressly exclude a magistrate's refusal to perform marriage ceremonies as an act that "violated his oath of office" or that constituted a form of "misbehavior in office" or otherwise provided cause for removal from office on a Class 1 misdemeanor.

61.	Senate Bill 2 also amended N.C.G.S. § 161-27 to add a subsection (b) that expressly protects assistant and deputy registers of deeds from being charged with a Class 1 misdemeanor for "recusal to issue marriage licenses in accordance with Chapter 51 of the General Statutes."

**E.  Senate Bill 2 Directed that Public Funds Be Used to Accomplish its Religious Goal.**

62.	Senate Bill 2 also authorized the expenditure of public funds to accomplish the goal of exempting magistrates from their oath of office on religious grounds. The law does so in at least two ways.

63.	First, language in N.C.G.S. § 51-5.5 provides that if all of the magistrates in a given county recuse themselves due to a "sincerely held religious objection" from performing marriages, the Administrative Office of the Courts shall arrange to bring a willing magistrate from another county to perform marriages in the county—an act that requires the expenditure of state funds. A district court judge would perform marriages until such an arrangement could be made.

64.	Second, under Section 5 of Senate Bill 2, any magistrate who had resigned his or her position after this Court's order in *General Synod* and then applied and was reappointed within 90 days

of the effective date of Senate Bill 2, would receive full service credit towards retirement for that gap in service from the magistrate's resignation to his or her reinstatement.

65.     To accomplish that end, Section 5 of Senate Bill 2 requires the "Judicial Department" or the Administrative Office of the Courts to pay into the state retirement system on behalf of each reappointed magistrate both the employee's and employer's share of retirement contributions to cover that gap in service.

**F.  Senate Bill 2 Became Law over the Governor's Veto.**

66.     Senate Bill 2 was approved by the full Senate on February 25, 2015.

67.     Debate on the Senate Floor made clear that moral disapproval of gay citizens exercising the fundamental right to marry motivated Senate Bill 2's passage: "I will not stand idly by and watch the demands of a few insist that a magistrate perform a wedding that he or she strongly believes to be immoral," said Sen. Buck Newton, co-sponsor of the bill.[10]

68.     On May 1, 2015, Defendant Warren became interim Director of the Administrative Office of the Courts.

69.     The House approved Senate Bill 2 on May 28, 2015.

70.     The Governor vetoed Senate Bill 2 that same day, issuing a formal statement explaining the reason for his veto:

> I recognize that for many North Carolinians, including myself, opinions on same-sex marriage come from sincerely held religious beliefs that marriage is between a man and a woman. However, we are a nation and a state of laws. Whether it is the president, governor, mayor, a law enforcement officer, or magistrate, no public official who voluntarily swears to support and defend the Constitution and to discharge all duties of their office should be exempt from upholding that oath; therefore, I veto Senate Bill 2.

---

[10] Colin Campbell, *NC Senate's Move to Exempt Magistrates Rekindles Marriage Debate*, The News & Observer (Feb. 25, 2015), http://www.newsobserver.com/news/politics-government/state-politics/article11312021.html.

71.    Despite the Governor's warning that Senate Bill 2 created a constitutional problem in allowing public officials to claim a religious exemption from their judicial oath of office, the legislature overrode the Governor's veto on June 11, 2015.

72.    On June 26, 2015, the U.S. Supreme Court ruled in *Obergefell v. Hodges,* 576 U.S. ___, 135 S. Ct. 2584 (2015), that state bans on marriage between same-sex couples violated both the Equal Protection and Due Process clauses of the Fourteenth Amendment.

73.    The legislature did not seek to modify or change Senate Bill 2 in the wake of the Supreme Court's decision in *Obergefell*.

**G.  North Carolina Has Expended Public Funds to Accomplish the Goals of Senate Bill 2.**

74.    Since Senate Bill 2 became law, on information and belief, at least 32 magistrates across North Carolina have invoked religious beliefs to recuse themselves from performing marriages because of their opposition to the constitutional right of gay and lesbian Americans to marry.

75.    On information and belief, these magistrates had previously performed marriages for opposite-sex couples freely and without compunction, but opted out of performing marriages solely because of their opposition to performing marriages for same-sex couples. On information and belief, they do not have any general religious objection to marriage between opposite-sex couples.

76.    On information and belief, all of the magistrates in McDowell County recused themselves from performing marriages under Senate Bill 2 because of their opposition to marriage equality for same-sex couples.

77.    On information and belief, these McDowell County magistrates had previously performed marriages for opposite-sex couples freely and without compunction, and opted out of performing marriages solely because of their opposition to performing marriages for same-sex couples.

15

On information and belief, they do not have any general religious objection to marriage between opposite-sex couples.

78. By opting out of performing marriages, these magistrates in McDowell County and across North Carolina have renounced the oath to uphold the United States Constitution; they have rejected and refused to defend, support, uphold and be bound by the Fourteenth Amendment rights of same-sex couples to marry.

79. On information and belief, Defendant Warren has expended public funds monthly under N.C.G.S. § 51-5.5(c) to further this religious exemption from the oath of office for all of McDowell County's magistrates, and to support and facilitate their renunciation of the judicial oath to be bound by the federal constitution, and oath he has taken as well.

80. As required by Senate Bill 2, Defendant Warren has paid and is paying and will continue to pay from public funds the costs necessary to transport an oath-abiding magistrate from Rutherford County to perform marriages in McDowell County, and to transport one or more of the oath-renouncing magistrates to Rutherford County to perform other judicial duties there while the oath-abiding, travelling magistrate performs constitutionally required marriages in McDowell County.

81. Defendant Warren knows that gay and lesbian citizens of McDowell County may need to appear before these oath-renouncing magistrates in other civil or criminal matters, but every magistrate in McDowell County believes that gay and lesbian Americans are second-class citizens not entitled to full Equal Protection and Due Process of law under the Fourteenth Amendment.

82. The gay and lesbian citizens of McDowell County also know that Defendant Warren has used their tax money specifically to support and aid these magistrates in their religious renunciation of the Fourteenth Amendment.

16

83.     On information and belief, after Senate Bill 2 became law, several former magistrates in the Western District who had resigned rather than be bound by this Court's October 10, 2014 ruling were reappointed as magistrates; other magistrates in other parts of the states who had resigned rather than perform same-sex marriages were similarly reappointed.

84.     For each of these reappointed magistrates, Defendant Warren paid tax dollars into the state employees' retirement system, both the employee and employer contributions, to purchase service credits for the gap in service from the time of each magistrate resigned -- rather the accept and uphold the federal constitution after this Court's ruling and after being ordered by Defendant Warren's predecessor to honor their oath and perform marriages, until the time of his or her reappointment as a magistrate under the provisions of Senate Bill 2.

85.     By paying public moneys pursuant to Senate Bill 2 to facilitate the renunciation of the judicial oath, Defendant Warren has expended tax dollars for an express religious purpose, and has sent and continues to send a deliberate, purposeful message to gay and lesbian citizens that they are not full citizens in the eyes of the state's judicial system, notwithstanding the ruling of this Court, the Fourth Circuit Court of Appeals and the Supreme Court, that the Equal Protection and Due Process Clauses of the U.S. Constitution included a fundamental right of gay and lesbian Americans to marry.

## CLAIM I
### First Amendment – Establishment Clause Violation
### (Applicable to Defendant Warren Pursuant to the Fourteenth Amendment)
### (All Plaintiffs)

86.     All prior paragraphs are incorporated by reference.

87.     Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983 to challenge Defendant Warren's actions, taken under color of state law, that violate the First Amendment to the U.S. Constitution, which applies to the state officials like Defendant under the Fourteenth Amendment.

17

88.     Defendant Warren's expenditure of public funds to further the statutory "right" of magistrates to renounce their judicial oath upon "any" "sincere" religious belief about marriage and not be "bound" by the Constitution violates the Establishment Clause of the First Amendment.

89.     Defendant Warren's spends public funds under Senate Bill 2 to aid religion – to accomplish a religious disavowal of the judicial obligation to uphold the federal constitution. His expenditures permits judicial officials to assert their religious beliefs as supreme to their judicial oath to uphold the federal constitution, and thus violate the Establishment Clause of the First Amendment.

90.     The primary purpose and effect of these expenditures is to endorse and further the primacy of a specific religious belief about marriage equality above the constitutional recognition of the right of those citizens to marry. They funding guarantees every magistrate who opposes the constitutional right to marriage equality a religious exemption from the judicial oath to support the constitution. The expenditure of taxpayer funds to achieve this religious purpose violates the Establishment Clause.

91.     Defendant Warren's expenditure of funds endorses and support single religious view of marriage equality that defies this Court's ruling that gay and lesbian Americans have a due process right to marry.  These expenditures are made pursuant to legislation that did not undertake any balancing of the individual and state interests at stake, as required in adopting any legislation with a religious impact.  Defendant Warren now spends the money without balancing the interests as stake.

92.     In the drafting of Senate Bill 2 and passing it into law, North Carolina failed to balance the public's societal interest in having all judges bound by their judicial oath to support and evenly apply the United States Constitution to all citizens, against the magistrates' interests in asserting their personal religious beliefs about marriage equality in the face of that judicial oath.

93. From the face of the legislation, North Carolina failed to undertake this required balancing of interests, rendering Senate Bill 2 constitutionally infirm. That also makes Defendant Warren's spending of the money unconstitutional.

94. Further, this legislation does not have a legitimate secular purpose.

95. The legislation's sole purpose is to advance a specific religious belief about marriage equality. That also makes Defendant Warren's spending of the money unconstitutional.

96. Moreover, Senate Bill 2 entangles the state in religious affairs, because it establishes a sincerity test for a magistrate's religious-based recusal from the duty to perform marriages. That also makes Defendant Warren's spending of the money unconstitutional.

97. Finally, the spending by Defendant Warren under Senate Bill 2 harms third parties because it compromises, impairs, and violates the constitutional integrity of the judicial system to the detriment of the citizens of North Carolina by protecting the employment of magistrates unwilling to recognize and protect the constitutional rights of a segment of the public: gay and lesbian citizens of McDowell County and every other county in the state. Defendant Warren recognizes this threat to the integrity of the judicial system but still spends the funds.

98. Under Senate Bill 2, the actions of the two magistrates who refused to conduct an interracial marriage for Carol Ann and Thomas Person on religious grounds, later found by a federal court to violate the Fourteenth Amendment, is sanctioned and protected conduct. Defendant Warren recognizes that fact but still expends the funds.

99. Plaintiffs seek and are entitled to a declaration that the spending of taxpayer funds by Defendant Warren to further Senate Bill 2 violates the First Amendment, and to an Order enjoining any further spending and enjoining the laws contained in the legislation.

100. Plaintiffs also seek and are entitled to costs and attorneys' fees under 42 U.S.C. § 1988 and *Hutto v. Finney,* 437 U.S. 678 (1978).

### CLAIM II
### Fourteenth Amendment – Equal Protection Violation
### (Plaintiffs Ansley, McGaughey, Penn, and Goodman)

101. All prior paragraphs are incorporated by reference.

102. Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983 to challenge Defendant Warren's actions, taken under color of state law, that violate the Fourteenth Amendment to the U.S. Constitution, which applies to the State of North Carolina.

103. Defendant Warren's actions to support the provisions of Senate Bill 2 through his department, including the expenditure of funds, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as it applies to Plaintiffs Ansley, McGaughey, Penn, Goodman, and all other gay and lesbian citizens of North Carolina.

104. Gay or lesbian citizens like Plaintiffs Ansley, McGaughey, Penn, and Goodman are exposed to the real, immediate, and substantial risk of discrimination in the enumerated civil or criminal proceedings before magistrates who believe as a matter of publicly sanctioned religious creed that gay and lesbian Americans are not entitled to the full rights of other citizens. Through his actions and efforts, Defendant Warren deliberately compromises, impairs, and violates the constitutional integrity of the judicial system that *must* provide equal protection of the law to gay and lesbian citizens in McDowell County and throughout North Carolina.

105. Gay and lesbian citizens in any other county where a magistrate has been recused from performing marriages under Senate Bill 2 must endure this same risk of appearing before a magistrate judge who believes they are not full citizens as a matter of state sanctioned religious belief.

20

106.     Specifically, Plaintiffs Penn and Goodman are deprived of the opportunity to have their secular marriage ceremony solemnized by a duly appointed magistrate untainted by the stigma of animus arising from the recusal of magistrates in Swain County.

107.     At its bottom, the actions of Defendant Warren taken under Senate Bill 2 single out gay and lesbian couples, and reject with animus the fundamental and equal right to the dignity of marriage afforded for gay and lesbian citizens protected under the Fourteenth Amendment, as held by this Court, the Fourth Circuit and in *Obergefell v. Hodges*, 576 U.S. ___, 135 S. Ct. 2584 (2015).  Defendant Warren's actions in administering the terms of Senate Bill 2 protect and support magistrates who deny gay and lesbian citizens equal treatment under the law, including Plaintiffs Ansley, McGaughey, Penn, and Goodman.

108.     Plaintiffs seek and are entitled to a declaration that Defendant Warren's actions to further Senate Bill 2's state-sanctioned recusal of oath-objecting magistrates from performing marriages of gay and lesbian citizens violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and to an Order enjoining Warren from taking further actions to in support of the goals of this legislation.

109.     Plaintiffs seek and are entitled to costs and attorneys' fees on Claim II under 42 U.S.C. § 1988 under *Hutto v. Finney,* 437 U.S. 678 (1978).

**CLAIM III**
**Fourteenth Amendment – Due Process Violation**
**(Plaintiffs Ansley, McGaughey, Penn, and Goodman)**

110.     All prior paragraphs are incorporated by reference.

111.     Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983 to challenge Defendant Warren's actions, taken under color of state law, that violate the Fourteenth Amendment to the U.S. Constitution, which applies to the State of North Carolina.

112.    Warren's actions in furtherance of the goals of Senate Bill 2 violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and thus the rights of Plaintiffs Ansley, McGaughey, Penn, and Goodman and all other gay and lesbian citizens of North Carolina.

113.    Warren's actions in furtherance of the goals of Senate Bill 2 Senate Bill 2 compromises, impairs, and violates the constitutional integrity of the judicial system. Although North Carolina Magistrates are judicial officers who are often a citizen's first contact with the judicial system and who are charged with protecting the constitutional rights of those who appear before them, gay or lesbian citizens, like Plaintiffs Ansley, McGaughey, Penn, and Goodman, will lose these protections and be exposed to the real, immediate, and substantial risk of discrimination in civil or criminal proceedings before magistrates who believe as a matter of publicly sanctioned religious creed that gay and lesbian citizens are not entitled to the full rights of other citizens.

114.    Gay and lesbian citizens in other counties where magistrates have recused themselves under Warren's actions, both in providing funds and administering the program, also must endure this same situation in derogation of their rights.

115.    Because of Warren's actions in furtherance of the goals Senate Bill 2, gay and lesbian citizens across the State of North Carolina must appear before judicial officials who are empowered and supported by Warren to adjudicate matters of significant importance while denying and defying the full constitutional rights of gay and lesbian citizens.

116.    Therefore, Warren's actions in furtherance of the goals of Senate Bill 2, deliberately compromises, impairs, and violates the constitutional integrity of the judicial system that must guarantee Due Process of the law to gay and lesbian citizens in McDowell County.

117.    Accordingly, Warren's actions in furtherance of the goals of Senate Bill 2 denies gay and lesbian citizens their fundamental right to access government services.

118. At its bottom, Warren's actions in furtherance of the goals of Senate Bill 2 single out gay and lesbian North Carolinians, reject with animus the substantive due process rights of gay and lesbian citizens to the dignity of marriage as protected under the Fourteenth Amendment by the U.S. Supreme Court in *Obergefell v. Hodges*, 576 U.S. ___, 135 S. Ct. 2584 (2015), and protect and support magistrates who deny and defy the constitutional right of gay and lesbian citizens to equal treatment under the law.

119. Plaintiffs seek and are entitled to costs and attorneys' fees on Claim III under 42 U.S.C. § 1988 under *Hutto v. Finney,* 437 U.S. 678 (1978).

## PRAYER FOR RELIEF

WHEREFORE, upon consideration of this matter, Plaintiffs pray for the following relief from the Court:

1. A Declaration that Defendant Warren's spending in furtherance of the goals Senate Bill 2 violates Article VI of the U.S. Constitution and the First Amendment, as applied to North Carolina under the Fourteenth Amendment;

2. A Declaration that Defendant Warren cannot support and protect magistrates who disavow the required Article VI judicial oath and duties on religious grounds;

3. A Declaration that Defendant Warren's use of public funds to advance a specific religious view of marriage equality is unconstitutional;

4. A Declaration that Defendant Warren's actions in furtherance of Senate Bill 2 violates the Due Process and Equal Protection Clauses under the Fourteenth Amendment;

5. An Order enjoining Defendant Warren's from further actions to implement Senate Bill 2, including the expenditure of public funds and the provision of administrative support to renouncing magistrates;

6. The costs and expenses in this action, including reasonable attorneys' fees under 42 U.S.C. § 1988; and,

7. Such other and further relief as the Court deems just and necessary.

Date: March 7, 2016                    Respectfully submitted,

**/s/ S. Luke Largess**
N.C. Bar 17486
llargess@tinfulton.com

**/s/ Jacob H. Sussman**
N.C. Bar No. 31821
jsussman@tinfulton.com

**/s/ John W. Gresham**
N.C. Bar No. 6647
jgresham@tinfulton.com

TIN FULTON WALKER & OWEN, PLLC
301 East Park Avenue
Charlotte, NC 28203
Tel: 704-338-1220
Fax: 704-338-1312

**/s/ Katherine Lewis Parker**
N.C. Bar No. 36263
kparker@tinfulton.com

TIN FULTON WALKER & OWEN, PLLC
1213 Culbreth Drive
Wilmington, NC 28405
Tel: 910-228-5200
Fax: 910-401-1155

**/s/ Meghann Burke**
N.C. Bar No. 42209
meghann@brazilburkelaw.com

BRAZIL & BURKE, P.A.
77 Central Avenue, Suite E
Asheville, NC 28801
Tel: 828-350-3812
Fax: 828-258-8972

24