# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

|  |  |  |
|---|---|---|
| KAY DIANE ANSLEY, ET AL., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | 1:16-CV-00054-MOC-DLH |
| | : | |
| MARION WARREN, in his Official | : | DISTRICT JUDGE |
| Capacity as Director of the North | : | MAX O. COGBURN, JR. |
| Carolina Administrative Office of the | : | |
| Courts, | : | MAGISTRATE JUDGE |
| | : | DENNIS L. HOWELL |
| Defendant. | : | |
| | : | |
| and | : | |
| | : | |
| BRENDA BUMGARNER, individually | : | |
| and on behalf of other similarly situated | : | |
| Jane and John Doe Magistrate Judges, | : | |
| | : | |
| Proposed Intervenor- | : | |
| Defendant. | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF NORTH CAROLINA MAGISTRATE JUDGE BRENDA BUMGARNER'S MOTION TO INTERVENE

---

Horatio G. Mihet*
Jonathan D. Christman*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, Florida 32854
Tel: (407) 875-1776
Fax: (407) 875-0770
hmihet@lc.org
jchristman@lc.org
*Motion for pro hac vice admission pending

Stuart D. Sloan
KENNEY SLOAN & VANHOOK, PLLC
111 Heritage Hollow Drive
Franklin, North Carolina 28734
Tel: (828) 276-1177
Fax: (828) 276-1178
stu@ksvlaw.com

*Attorneys for Brenda Bumgarner*

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

RELEVANT BACKGROUND ....................................................................................... 2

    A. North Carolina Senate Bill 2 .......................................................................... 2

    B. The Intervenor Applicant, Magistrate Judge Brenda Bumgarner ...................... 3

    C. Plaintiffs' Multiple Lawsuits Challenging Senate Bill 2 .................................. 7

STANDARD OF REVIEW ............................................................................................. 8

ARGUMENT .................................................................................................................. 9

    A. This Court Should Grant Bumgarner Intervention As Of Right .......................... 9

        1. Bumgarner's Request To Intervene Is Timely .......................................... 9

        2. Bumgarner And Other Similarly Situated Magistrates Have An Immediate And Substantial Interest Relating To The Subject Matter Of This Action Because They Are The Direct And Intended Beneficiaries Of Senate Bill 2 ................................... 10

        3. Bumgarner's And Other Similarly Situated Magistrates' Interests May Be Impaired Without Intervention .................................................................................. 15

        4. Bumgarner's And Other Similarly Situated Magistrates' Interests Are Not Adequately Represented By The Defendant .................................................................. 16

    B. Alternatively, This Court Should Permit Bumgarner To Intervene .................... 23

        1. Bumgarner's Request To Intervene Is Timely ......................................... 24

        2. There Is A Sufficient Nexus Between Plaintiffs' Claims And The Issues, Claims, Or Defenses Raised By Bumgarner And Other Similarly Situated Magistrates Regarding Senate Bill 2 ............................................................................................... 24

        3. Neither Plaintiffs Nor The Defendant Will Be Prejudiced By Bumgarner's Involvement In This Litigation And No Undue Delay Will Result From Allowing Her To Intervene .................................................................................................. 25

CONCLUSION ............................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ams. United for Separation of Church & State v. City of Grand Rapids*,
    922 F.2d 303 (6th Cir. 1990) ................................................................21

*Bd. of Regents of State Colleges v. Roth*,
    408 U.S. 564 (1972) ................................................................................12

*Borough of Duryea, Pa. v. Guarnieri*,
    131 S.Ct. 2488 (2011) ............................................................................14

*Brumfield v. Dodd*,
    747 F.3d 339 (5th Cir. 2014) ............................................11, 15, 16, 19

*California ex rel. Lockyer v. U.S.*,
    450 F.3d 436 (9th Cir. 2006) ........................................10, 11, 13, 16

*Chesapeake Bay Found. v. Am. Recovery Corp.*,
    769 F.2d 207 (4th Cir. 1985) ..................................................................8

*Commonwealth of Va. v. Westinghouse Elec. Corp.*,
    542 F.2d 214 (4th Cir. 1976) ................................................................17

*Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*,
    219 F.3d 31 (1st Cir. 2000) ..................................................................12

*Day v. Sebelius*,
    227 F.R.D. 668 (D. Kan. 2005) ............................................................13

*Defenders of Wildlife v. North Carolina Dep't of Transp.*,
    281 F.R.D. 264 (E.D.N.C. 2012) ................................................15, 17, 24

*Donaldson v. U.S.*,
    400 U.S. 517 (1971) ..............................................................................10

*Feller v. Brock*,
    802 F.2d 722 (4th Cir. 1986) ......................................................8, 16, 17

*Flying J., Inc. v. Van Hollen*,
    578 F.3d 569 (7th Cir. 2099) ......................................................10, 15, 16

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ..............................................................................14

ii

# TABLE OF AUTHORITIES
(continued)

*Gen. Synod of the United Church of Christ v. Resinger*,
No. 14-213, 2014 WL 5094093 (W.D.N.C. Oct. 10, 2014) ...................................8, 10, 22, 23

*GMAC Mortgage, LLC v. Flick Mortgage Investors, Inc.*,
No. 09-125, 2011 WL 841409 (W.D.N.C. Mar. 7, 2011).........................................................9

*Goss v. Lopez*,
419 U.S. 565 (1975)...................................................................................................................12

*Grutter v. Bollinger*,
188 F.3d 394 (6th Cir. 1999) ....................................................................................................15

*Houston Gen. Ins. Co. v. Moore*,
193 F.3d 838 (4th Cir. 1999) ................................................................................................8, 9

*In re: Sierra Club*,
945 F.2d 776 (4th Cir. 1991) ............................................................................................12, 19

*JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*,
321 Fed. App'x 286 (4th Cir. 2099) ...................................................................................17, 19

*Karcher v. May*,
484 U.S. 72 (1987)....................................................................................................................21

*Lane v. Franks*,
134 S.Ct. 2369 (2014)...............................................................................................................14

*Nat'l Farm Lines v. Interstate Commerce Comm'n*,
564 F.2d 381 (10th Cir. 1977) .................................................................................................11

*New York Public Interest Research Group, Inc. v. Regents of Univ.*,
516 F.2d 350 (2d Cir. 1975).....................................................................................................11

*Planned Parenthood Minnesota v. Daugaard*,
836 F. Supp. 2d 933 (D.S.D. 2011) .........................................................................................11

*Reich v. ABC/York-Estes Corp.*,
64 F.3d 316 (7th Cir. 1995) ........................................................................................................8

*Republican Party of North Carolina v. Martin*,
865 F.2d 1259 (4th Cir. 1988) .................................................................................................22

iii

*Richman v. First Woman's Bank*,
104 F.3d 654 (4th Cir. 1997) ........................................................................8, 21

*Royster v. Bd. of Trustees of Anderson Cnty. Sch. Dist.*,
774 F.2d 618 (4th Cir. 1985) .............................................................................12

*Scardelletti v. Debarr*,
265 F.3d 195 (4th Cir. 2001) ...............................................................................9

*Spring Constr. Co., Inc. v. Harris*,
614 F.2d 374 (4th Cir. 1980) .............................................................................15

*Stuart v. Huff*,
706 F.3d 345 (4th Cir. 2013) ................................................................17, 22, 23

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ...............................................................................8

*Taft v. Pontarelli*,
100 F.R.D. 19 (D.R.I. 1983) ..............................................................................11

*Teague v. Bakker*,
931 F.2d 259 (4th Cir. 1991) ......................................................................10, 19

*Texas v. U.S.*,
805 F.3d 653 (5th Cir. 2015) ..................................................................... *passim*

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972).....................................................................................16, 17

*United Guaranty Residential Ins. Co. of Iowa v. Philadelphia Savings Fund Society*,
819 F.2d 473 (4th Cir. 1987) .............................................................................17

**Constitutional Provisions**

N.C. CONST. Art. I, Sec. 13........................................................................6, 14

N.C. CONST. Art. I, Sec. 14........................................................................6, 14

N.C. CONST. Art. I, Sec. 19........................................................................6, 14

N.C. CONST. Art. IV, Sec. 7 .............................................................................4

# TABLE OF AUTHORITIES
(continued)

**Page**

N.C. CONST. Art. XIV, Sec. 6 .............................................................................................5

**Statutes**

N.C. GEN. STAT. § 7A-292 .............................................................................................2, 3

N.C. GEN. STAT. § 14-230 ............................................................................................3, 13

N.C. GEN. STAT. § 51-1 ....................................................................................................5

N.C. GEN. STAT. § 51-1.2 .................................................................................................5

N.C. GEN. STAT. § 51-2 ....................................................................................................5

N.C. GEN. STAT. § 51-5.5 .........................................................................................3, 6, 13

**Rules**

Fed. R. Civ. P. 24 .................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 24 advisory committee notes ...............................................................10

Case 1:16-cv-00054-MOC-DLH   Document 9   Filed 03/11/16   Page 6 of 33

North Carolina Magistrate Judge Brenda Bumgarner ("Bumgarner"), on behalf of herself and other similarly situated Jane and John Doe Magistrate Judges (collectively, "Magistrates")[1], by and through her undersigned counsel, respectfully submits this Memorandum of Law in Support of her Motion to Intervene on the side of Defendant Marion Warren ("Warren" or "Defendant") in the above-referenced case.[2]

## I.    <u>INTRODUCTION</u>

Bumgarner and other similarly situated Magistrates satisfy the requirements for intervention as of right under Federal Rule of Civil Procedure 24(a) because they stand to gain or lose by this Court's judgment on this second challenge to the constitutionality of Senate Bill 2, and their rights and interests are not adequately represented in this lawsuit. This application to intervene is indisputably timely since Plaintiffs' duplicative lawsuit was filed only days ago and the Defendant has not even responded to Plaintiffs' Complaint. Also, Bumgarner and other similarly situated Magistrates possess sufficiently protectable interests in the subject matter of this action because they are the direct and intended beneficiaries of Senate Bill 2, and, upon exercising the recusal rights provided thereunder, now hold protectable interests in the statutory benefit being challenged in this lawsuit. These rights and interests may be practically impaired and impeded by this Court's judgment in this matter, depending on the outcome. However, Bumgarner's (and other

---

[1]    As indicated, this motion is being filed individually and on behalf of a proposed class of similarly situated Magistrates, some of whom may be willing to reveal their identity and others whom may desire to proceed in this action under a pseudonym to protect their identity(ies) for fear of harassment, intimidation, retaliation, termination of their position or retaliatory failure to re-appoint them to another term as a Magistrate based upon their decision to exercise their statutory right of recusal from performing marriages.

[2]    This motion to intervene was originally filed in the case of *Kay Diane Ansley, et al. v. State of North Carolina*, No. 1:15-cv-00274 (W.D.N.C.) (hereinafter, "*Ansley I*" action), a nearly identical lawsuit filed with this Court and voluntarily dismissed by Plaintiffs on March 7, 2016. The Court made no ruling on Bumgarner's prior motion to intervene as briefing was not yet completed on that motion when Plaintiffs dismissed the lawsuit.

1

Magistrates') interests are not adequately represented in this matter by the Defendant because his attorney (the North Carolina Attorney General) has publicly declared personal opposition to Senate Bill 2 and has publicly stated in his gubernatorial campaign that if he were governor, he would veto Senate Bill 2. Moreover, Bumgarner previously sued the Defendant's office seeking a religious accommodation on this very subject matter before Senate Bill 2 became law. Thus, Bumgarner's individual and constitutional interests are directly and substantially adverse to the declared position of the Attorney General, the primary defender of Senate Bill 2 in this litigation.

Alternatively, Bumgarner also seeks permissive intervention in this matter pursuant to Rule 24(b). The issues, claims and defenses raised by Bumgarner and other similarly situated Magistrates share a common question of law with this action, and will not cause undue delay or prejudice to the existing parties. In fact, as the real beneficiaries of Senate Bill 2, Bumgarner's (and other Magistrates') participation will assist the Court in its review and consideration of the sufficiency of Plaintiffs' Complaint under Rule 12[3], and, if Plaintiffs' Complaint survives the pleading stage, the constitutionality of Senate Bill 2.

## II.    RELEVANT BACKGROUND

### A.    North Carolina Senate Bill 2.

Senate Bill 2 allows magistrates, assistant registers of deeds, and deputy registers of deeds to recuse themselves from performing any duties related to marriage ceremonies due to their sincerely held religious objection.[4] Specifically for magistrates, Senate Bill 2 provides:

---

[3]    Contemporaneous with the instant Motion to Intervene and in accordance with Rule 24(c), Bumgarner is submitting a motion to dismiss Plaintiffs' Complaint which addresses multiple pleading deficiencies that require dismissal for lack of subject matter jurisdiction and failure to state an actionable claim.

[4]    The North Carolina legislature establishes the jurisdiction, powers, and duties of magistrates by statute. Among the "additional powers" given to magistrates is the power "[t]o perform the marriage ceremony, as provided in G.S. 51-1." N.C. GEN. STAT. § 7A-292(a)(9).

2

> Every magistrate has the right to recuse from performing all lawful marriages under this Chapter based upon any sincerely held religious objection. Such recusal shall be upon notice to the chief district court judge and is in effect for at least six months from the time delivered to the chief district court judge. The recusing magistrate may not perform any marriage under this Chapter until the recusal is rescinded in writing. The chief district court judge shall ensure that all individuals issued a marriage license seeking to be married before a magistrate may marry.

N.C. GEN. STAT. § 51-5.5(a). Senate Bill 2 also provides that "No magistrate . . . may be charged or convicted under G.S. 14-230 . . ., or subjected to a disciplinary action, due to a good-faith recusal under this section." N.C. GEN. STAT. § 51-5.5(d); *see also* N.C. GEN. STAT. § 14-230(b) ("No magistrate recusing in accordance with G.S. 51-5.5. may be charged under this section for recusal to perform marriages in accordance with Chapter 51 of the General Statutes.").

Senate Bill 2 was originally vetoed by Governor Pat McCrory ("Gov. McCrory") on May 28, 2015, but the North Carolina General Assembly overrode his veto[5], and the bill became law two weeks later, on June 11, 2015.

### B. The Intervenor Applicant, Magistrate Judge Brenda Bumgarner.

Bumgarner currently serves as a Magistrate Judge in Alexander County, North Carolina, which is an appointed position. Declaration of Brenda Bumgarner dated Mar. 8, 2016 (hereinafter, "Bumgarner Decl."), ¶ 2. She has served in this position for more than ten years, after multiple subsequent appointments following her original appointment. *Id.* Having now served as a

---

However, Senate Bill 2 clarifies this power by stating that "[t]he authority granted to magistrates under G.S. 51-1 and subdivision (a)(9) of this section is a responsibility given collectively to the magistrates in a county and is not a duty imposed upon each individual magistrate. The chief district court judge shall ensure that marriages before a magistrate are available to be performed at least a total of 10 hours per week, over at least three business days per week." N.C. GEN. STAT. § 7A-292(b).

[5]     The legislature overrode Gov. McCrory's veto by super-majority votes of 32-16 in the North Carolina Senate, and 69-41 in the North Carolina House.

3

Magistrate Judge for more than ten years, she desires to maintain this position at the conclusion of her current appointment. *Id.* The work of a Magistrate Judge is a full-time position, and the salary earned from this work is used to support her family. *Id.*

Like other Magistrate Judges, Bumgarner has taken and subscribed to an oath of office set forth in Article IV, Sec. 7 of the North Carolina Constitution:

> I, _____, do solemnly swear that I will support and maintain the Constitution and laws of the United States, and the Constitution and laws of North Carolina not inconsistent therewith, and that I will faithfully discharge the duties of my office as Magistrate, so help me God.

*Id.* at ¶ 3. As a Magistrate Judge, Bumgarner handles both civil and criminal matters. *Id.* at ¶ 4. Among other things, Magistrate Judges preside over small claims court, decide certain landlord-tenant matters, review domestic violence charges to determine probable cause for summons or warrant, establish bail in certain cases, and may also accept guilty pleas or payments of fines and costs for traffic code violations and minor misdemeanors. *Id.* Persons who appear before Bumgarner in her courtroom are treated equally, with fairness and dignity, and without discrimination. *Id.*

Bumgarner has been a committed Christian for many years. *Id.* at ¶ 6. Her sincerely held religious beliefs are fundamental to her identity, autonomy, and definition of self. *Id.* They are part of a worldview and belief system by which she orders her life and faithfully executes and conducts her duties as a Magistrate Judge and citizen of the State of North Carolina. *Id.* Like other Magistrate Judges, she has a sincerely held religious belief and conviction that marriage is an institution ordained by God as the union between one man and one woman as a reflection of the complementarity of the sexes, and that no other union of people can be solemnized as a "marriage" because it lacks the complementarity created by God. *Id.* at ¶ 7. This is not a belief that she can compromise, and she sincerely believes that God forbids calling any other union of people a

4

"marriage." *Id.* As such, her religious beliefs and convictions compel her to refrain from solemnizing marriages for same-sex couples. *Id.* By solemnizing a marriage for a same-sex couple, she would be approving of same-sex marriage and this would substantially burden her sincerely held religious beliefs about marriage. *Id.* She cannot approve a same-sex marriage and still maintain her religious conscience. *Id.*

This deep religious conviction is commensurate with the North Carolina marriage law set forth in the North Carolina Constitution and North Carolina General Statutes at the time Bumgarner and others took office as Magistrate Judges. *See* N.C. GEN. STAT. §§ 51-1, 1.2, 2; *see also* N.C. CONST. Art. XIV, § 6; Bumgarner Decl., at ¶ 8. She is committed to public service and believes that, to this day, she is still supporting the United States and North Carolina Constitutions and laws "so help me God" as she faithfully executes the statutory jurisdiction, duties and additional powers of a Magistrate Judge in this State. Bumgarner Decl., at ¶ 8. She has never disavowed her oath or duties as a Magistrate Judge. *Id.* Moreover, Bumgarner has never been suspended from performing the duties of her office as a Magistrate Judge, or removed from that office during her multiple appointments. *Id.* at ¶ 5.

On June 12, 2015, the North Carolina Administrative Office of the Courts provided a memorandum to *inter alia*, all North Carolina Magistrate Judges, including Bumgarner, informing them that Senate Bill 2 became law on June 11, 2015, and that the law permitted Magistrate Judges to recuse themselves from performing all lawful marriages based upon a sincerely held religious objection. *Id.* at ¶ 9. This memorandum provided further details about claiming the recusal by submitting a form entitled Magistrate Recusal from the Solemnization of Marriages to the Chief District Court Judge in the Magistrate Judge's home county. *Id.* This form, once completed, was to be filed with the Human Resources as part of each Magistrate Judge's confidential personnel

5

file. *Id.* The Magistrate Recusal from the Solemnization of Marriages form recited language from N.C. GEN. STAT. § 51-5.5(a), providing that "Every magistrate has the right to recuse from performing all lawful marriages under this Chapter based upon any sincerely held religious objection. Such recusal shall be based upon notice to the chief district judge and is in effect for at least six months from the time delivered to the chief district judge. The recusing magistrate may not perform any marriage under this Chapter until the recusal is rescinded in writing." Bumgarner Decl., at ¶ 10.

On June 17, 2015, Bumgarner signed, completed, and submitted the Magistrate Recusal from the Solemnization of Marriages form. *Id.* at ¶ 11. By exercising this recusal, she is excluded from performing any lawful marriages in Alexander County. *Id.* This recusal from performing any marriages provides a simple religious accommodation to Bumgarner and other similarly situated Magistrate Judges. *Id.* Without this recusal, Bumgarner, and other similarly situated Magistrate Judges, will lose a statutory right and benefit that furthers and expressly protects individual religious freedoms guaranteed by the United States and North Carolina Constitutions. *Id.* at ¶ 12.[6] This recusal also protects Bumgarner's rights, interests, and ongoing ability to serve as a Magistrate Judge, without surrendering her sincere beliefs. *Id.* However, exercising this recusal does not bar or prevent the solemnization of any marriages in Alexander County, or elsewhere. *Id.*

---

[6]     Bumgarner is a former Jane Doe plaintiff in the case of *Charlie Smoak, et al. v. John W. Smith, et al.*, which was filed on or about February 9, 2015 in the Superior Court of North Carolina. Bumgarner Decl., at ¶ 14. This Complaint was filed to protect her sincerely held, fundamental religious beliefs and alleged violations of freedom of conscience, freedom of speech, due process and equal protection and asserted causes of action under Article I, §§ 13, 14, and 19 of the North Carolina Constitution arising from the actions of the Defendant's office mandating that Magistrates solemnize same-sex relationships as marriages. *Id.* The Defendant's office, through the Attorney General, opposed the Complaint, which was voluntarily dismissed without prejudice following the enactment of Senate Bill 2. *Id.*

According to publicly available reports attributed to the North Carolina Administrative Office of the Courts, there are nearly 700 Magistrate Judges across North Carolina, of whom more than 30 have opted to claim their right to recusal. *Id.* at ¶ 13. The identities of these individuals have not been released due to the confidential nature of each Magistrate Judge's personnel file. *Id.* Certainly other Magistrate Judges who hold similar sincerely held religious beliefs and desire to serve (or continue to serve) as Magistrate Judges will elect to take this recusal in the future if it remains available. *Id.* The recusal authorized by Senate Bill 2 is generally applicable across the state, and the recusal form is also uniform throughout the state. *Id.*

C. **Plaintiffs' Multiple Lawsuits Challenging Senate Bill 2.**

On December 9, 2015, Plaintiffs filed a Complaint seeking a declaration that Senate Bill 2 violates the First and Fourteenth Amendments of the United States Constitution and asking this Court to "enjoin the North Carolina statute as unconstitutional." *See Ansley I, supra,* D.E. 1 at 1, 19. The lawsuit directly challenged Bumgarner's and other similarly situated Magistrates' statutory rights to recusal from performing marriages, as provided under Senate Bill 2. Before the State filed any response to Plaintiffs' Complaint, Bumgarner moved to intervene in the lawsuit as a defendant and filed a proposed motion to dismiss addressing multiple deficiencies with Plaintiffs' Complaint. *See Ansley I, supra,* D.E. 13, 16; *see also* Bumgarner Decl., at ¶ 15. Without filing any opposition to Bumgarner's motion to intervene, Plaintiffs voluntarily dismissed their Complaint in the *Ansley I* action on March 7, 2016 before the Court made any substantive rulings on the pending motions. Almost immediately, Plaintiffs filed the instant action naming Warren in his official capacity as Director of the North Carolina Administrative Office of the Courts as Defendant, not the State.

7

## III.    STANDARD OF REVIEW

To intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), an applicant must meet four criteria: "(1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (citing Fed. R. Civ. P. 24(a)(2)); *Gen. Synod of the United Church of Christ v. Resinger*, No. 14-213, 2014 WL 5094093, at *1 (W.D.N.C. Oct. 10, 2014) (Cogburn, Jr., J.). The proposed intervenor bears the burden of demonstrating a right to intervene. *Richman v. First Woman's Bank*, 104 F.3d 654, 658 (4th Cir. 1997). Nonetheless, in considering intervention, the Fourth Circuit has explained that "liberal intervention is desirable to dispose of as much of a controversy 'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (citation omitted).[7]

Additionally, if intervention as of right is not warranted, a court may still allow an applicant to intervene permissively. Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In reviewing permissive applications, a court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

---

[7]    This Court should "accept as true the nonconclusory allegations made in support of an intervention motion." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001); *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995); *Chesapeake Bay Found. v. Am. Recovery Corp.*, 769 F.2d 207, 209 n.* (4th Cir. 1985).

8

## IV.  ARGUMENT

### A.  This Court Should Grant Bumgarner Intervention As Of Right.

This Court should grant Bumgarner's motion to intervene as of right on behalf of herself and other similarly situated Magistrates because her request is timely, she (and other similarly situated Magistrates) have an immediate and substantial interest relating to the subject matter of this action as the direct and intended beneficiaries of Senate Bill 2, her rights and interests may be impaired without intervention, and the Defendant—represented by the North Carolina Attorney General and gubernatorial candidate Roy Cooper ("Atty. Gen. Cooper") who adamantly and publicly opposed Senate Bill 2—will not adequately represent her interests in this litigation.

### 1.  Bumgarner's Request To Intervene Is Timely.

"Timeliness" is a "cardinal consideration" in whether a court permits intervention. *Houston General*, 193 F.3d at 839. Courts look to several factors to determine whether an application to intervene is timely, including "how far the suit has progressed, the prejudice that delay might cause other parties, and the reason for the tardiness in moving to intervene." *Scardelletti v. Debarr*, 265 F.3d 195, 203 (4th Cir. 2001), *rev'd on other grounds*, *Devlin v. Scardelletti*, 122 S.Ct. 2005 (2002) (citation omitted). Here, there can be no question that Bumgarner's application to intervene is timely, and not delayed in the least. Plaintiffs' Complaint was filed only a couple days ago, following Plaintiffs' voluntary dismissal of the *Ansley I* action. The Defendant has not yet responded to Plaintiffs' Complaint, and no party will be prejudiced by the proposed intervention at this early stage. *See GMAC Mortgage, LLC v. Flick Mortgage Investors, Inc.*, No. 09-125, 2011 WL 841409, at *3 (W.D.N.C. Mar. 7, 2011) (Conrad, J.) (intervention timely where case "has not progressed beyond the initial pleadings stage" and granting the motion "would not prejudice" current parties). Accordingly, Bumgarner's request to intervene on behalf of herself and other similarly situated Magistrates is timely.

9

2. **Bumgarner And Other Similarly Situated Magistrates Have An Immediate And Substantial Interest Relating To The Subject Matter Of This Action Because They Are The Direct And Intended Beneficiaries Of Senate Bill 2.**

Bumgarner, on behalf of herself and other similarly situated Magistrates, has an immediate and substantial interest in this action because she is among the direct and intended beneficiaries of Senate Bill 2, the legislation challenged in this lawsuit. While Rule 24(a) does not specify the precise nature of the interest necessary to intervene as of right in pending litigation, the Supreme Court has recognized that "[w]hat is obviously meant . . . is a significantly protectable interest" in the subject matter of the litigation. *Donaldson v. U.S.*, 400 U.S. 517, 542 (1971); *see also Gen. Synod*, 2014 WL 5094093, at *1; Fed. R. Civ. P. 24 advisory committee notes ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."). Where a proposed intervenor stands "to gain or lose by the direct legal operation of the district court's judgment," the intervenor's interest is significantly protectable. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).

Numerous federal courts across the country, including the Second, Fifth, Seventh, Ninth, and Tenth Circuits, have held that the intended beneficiaries of laws and statutes possess the requisite "interest" to intervene as of right. *See Texas v. U.S.*, 805 F.3d 653, 661 (5th Cir. 2015) ("The Jane Does are not individuals seeking to defend a governmental policy they support on ideological grounds; **rather, they are the intended beneficiaries of the program being challenged**.") (emphasis added); *Flying J., Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) ("[The proposed intervenors] are the statute's direct beneficiaries. . . **The interest of the private persons intended to be benefited by the [state statute] . . . is therefore sufficient to warrant intervention under Rule 24(a)(2)**.") (emphasis added); *California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 441 (9th Cir. 2006) ("[The proposed intervenors] are the intended beneficiaries of this

10

law . . . The proposed intervenors' interest thus is neither 'undifferentiated' nor 'generalized.'")
(internal quotation marks omitted); *Nat'l Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d
381, 382 (10th Cir. 1977) (allowing common carriers who operated under certificates issued by
government agency to intervene in action challenging constitutionality of the statute and
regulations by which they obtained said certificates); *New York Public Interest Research Group,
Inc. v. Regents of Univ.*, 516 F.2d 350, 352 (2d Cir. 1975) (per curiam) (holding that association
of pharmacists had sufficient interest to intervene "since the validity of a regulation from which
its members benefit is challenged"); *see also*, *e.g.*, *Planned Parenthood Minnesota v. Daugaard*,
836 F. Supp. 2d 933, 941 (D.S.D. 2011) (allowing crisis pregnancy centers who were
"beneficiaries" of state's abortion law requirements to intervene as of right in lawsuit challenging
statute under First and Fourteenth Amendments); *Taft v. Pontarelli*, 100 F.R.D. 19, 20-21 (D.R.I.
1983) (granting motion to intervene filed by parents of children who attended religiously affiliated
schools and allegedly "benefit from enhanced educational opportunities" provided by state statute
being challenged as an unconstitutional under the First Amendment). This compelling authority
warrants a similar conclusion on Bumgarner's request to intervene.

First, Bumgarner has a significantly protectable interest in the core subject matter of this
litigation—Senate Bill 2—because she and other similarly situated Magistrates are the intended
beneficiaries of the rights and freedoms that the statute protects. As such, Bumgarner is not simply
"within the zone of interest of the legislation" but one of its "primary intended beneficiaries." *See
Brumfield v. Dodd*, 747 F.3d 339, 344 (5th Cir. 2014). She therefore asserts "not only a matter of
public interest but matters more relevant to them than to anyone else." *Brumfield*, 747 F.3d at 344
(allowing parents of children who benefitted from scholarship program to intervene). Bumgarner
does not simply possess a "mere generalized interest" in Senate Bill 2. *See Texas*, 805 F.3d at 660.

11

Instead, she and other similarly situated Magistrates are the intended beneficiaries of the challenged North Carolina statute. *See* Bumgarner Decl., at ¶¶ 9-12. Moreover, Bumgarner is not seeking to intervene on behalf of herself and other similarly situated Magistrates "merely as a lobbyist or because of a speculative future interest." *In re: Sierra Club*, 945 F.2d 776, 779 n.8 (4th Cir. 1991). To the contrary, Bumgarner "will or will not be eligible" for the statutory protection "depending on the outcome of this case." *Texas*, 805 F.3d at 660; *see also* Bumgarner Decl., ¶ 12.

Second, Bumgarner and similarly situated Magistrates who have already exercised the statutory recusal provided by Senate Bill 2 possess a property interest in that benefit, as well as their job. "To have a property interest in a benefit [or job], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Royster v. Bd. of Trustees of Anderson Cnty. Sch. Dist.*, 774 F.2d 618, 620 (4th Cir. 1985). Benefits created by statutes become property interests that cannot be taken away without providing basic due process rights. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975). Without any dispute, Senate Bill 2 is the law of North Carolina and creates a statutory right for Magistrates to recuse themselves from participating in the solemnization of marriages based upon sincerely-held religious beliefs. *See* Bumgarner Decl., at ¶¶ 6-12. This duly-enacted statute is in force and, as such, confers a legally protectable property interest upon Bumgarner and other similarly situated Magistrates. Where, as here, proposed intervenors have a property interest at stake in the litigation, intervention is allowed as of right. *See*, *e.g.*, *Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 32, 35 (1st Cir. 2000) (permitting black police officers who were promoted to intervene in action brought by white police officers challenging constitutionality of promotion program within police department, and concluding that "to say that an officer has no

12

interest in defending his own promotion would be to defy common sense"); *Day v. Sebelius*, 227 F.R.D. 668, 673-74 (D. Kan. 2005) (holding that undocumented aliens who were currently "benefitting" from state bill providing them in-state college tuition rates possessed sufficient interest to intervene as of right because the statutory right to the reduced tuition conferred a legally protectable property interest).

Third, Bumgarner and similarly situated Magistrates have an identifiable and personal interest in the "important layer of protection" from criminal prosecution or civil liability that Senate Bill 2 provides them. *See Lockyer*, 450 F.3d at 441. As indicated above, Senate Bill 2 provides that "No magistrate . . . may be charged or convicted under G.S. 14-230 . . ., or subjected to a disciplinary action, due to a good-faith recusal under this section," N.C. GEN. STAT. § 51-5.5(d), and "No magistrate recusing in accordance with G.S. 51-5.5. may be charged under this section for recusal to perform marriages in accordance with Chapter 51 of the General Statutes." N.C. GEN. STAT. § 14-230(b). This is a critical, individual protection for Bumgarner and other similarly situated Magistrates because prior to the enactment of Senate Bill 2, the North Carolina Administrative Office of the Courts issued memoranda to magistrates and other public officials claiming that a magistrate's refusal to solemnize a "marriage" of a same-sex couple was "grounds for suspension or removal from office, as well as, potential criminal charges."[8] Senate Bill 2 thus not only provides a religious accommodation for magistrates from a non-mandatory "additional

---

[8] *See* Memorandum from P. Best, General Counsel for the North Carolina Administrative Office of the Courts, to Superior Court Judges, *et al.*, re: Same-Sex Marriages (Oct. 14, 2014), *available at* http://www.nccourts.org/News/Documents/Marriage/legal-counsel-memo-same-sex-marriages-UPDATE.pdf (last accessed Mar. 9, 2016); *see also* Ltr. from Judge J. Smith, Director for the North Carolina Administrative Office of the Courts, to Sen. Berger re: letter dated Oct. 24, 2014 (Nov. 5, 2014), *available at* http://www.nccourts.org/News/Documents/Marriage/Response-on-Marriages-by-Magistrates.pdf (last accessed Mar. 9, 2016) (indicating that magistrates who refuse to perform "marriages" for same-sex couples "may risk personal liability in such a case").

13

power" given to magistrates, but also, the statute specifically protects Bumgarner and similarly situated Magistrates from any criminal prosecution or civil liability for claiming the recusal based upon their undisputed sincerely held religious beliefs. *See* Bumgarner Decl., at ¶¶ 6-7.

Finally, Bumgarner and other similarly situated Magistrates also have an interest in this action to ensure that their rights under the United States and North Carolina Constitutions are not eviscerated. "Almost fifty years ago, this Court declared that citizens do not surrender their First Amendment rights by accepting public employment." *Lane v. Franks*, 134 S.Ct. 2369, 2374 (2014). Indeed, the Supreme Court has "made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Although a citizen entering government service must "by necessity" accept "certain limitations on his or her freedom," *id.* at 417, such person's constitutional rights are not circumscribed in their entirety. Instead, there are "some rights and freedoms so fundamental to liberty" that a citizen is "not deprived of [these] fundamental rights by virtue of working for the government." *Borough of Duryea, Pa. v. Guarnieri*, 131 S.Ct. 2488, 2493-94 (2011) (citation omitted). Not only that, Bumgarner and other similarly situated Magistrate Judges possess religious conscience, free speech, due process, and equal protection rights under the North Carolina Constitution that are implicated by Plaintiffs' lawsuit. *See* N.C. CONST., Art. I, § 13 (religious conscience); *id.* at § 14 (free speech); *id.* at § 19 (due process and equal protection). In fact, Bumgarner previously sued the Defendant's office to enforce these rights on this very subject matter—a lawsuit that was only voluntarily dismissed once Senate Bill 2 became law. Bumgarner Decl., at ¶ 14. Thus, a person's constitutional rights and liberties are not immediately eviscerated the moment they take office as a Magistrate Judge. As the direct and intended beneficiaries of Senate Bill 2, and holding additional constitutional rights that are implicated by this lawsuit,

14

Bumgarner and other similarly situated Magistrates possess a significantly protectable interest in the subject matter of this action sufficient to grant intervention as of right.

### 3. Bumgarner's And Other Similarly Situated Magistrates' Interests May Be Impaired Without Intervention.

Once a proposed intervenor has established a sufficient interest in the subject matter of the action, they must also demonstrate that the disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(b)(2); *see also Defenders of Wildlife v. North Carolina Dep't of Transp.*, 281 F.R.D. 264, 268 (E.D.N.C. 2012). This requirement "does not demand that the movant be bound by a possible future judgment." *Brumfield*, 749 F.3d at 344; *see also Spring Constr. Co., Inc. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980) ("[I]n order to intervene of right, a party need not prove that he would be bound in a res judicata sense by any judgment in the case."). Thus, Bumgarner and other similarly situated Magistrates need not "establish that their interests will be impaired. Rather, they must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield*, 749 F.3d at 344; *see also Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) ("To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is **possible** if intervention is denied. This burden is **minimal**.") (emphasis added); *Spring Constr.*, 614 F.2d at 377. In the case at bar, no party can reasonably maintain that Bumgarner's (and other similarly situated Magistrates') interests will not be practically impaired if Plaintiffs obtain the relief they seek in this lawsuit—*i.e.*, a declaration that Senate Bill 2 violates the United States Constitution and an enjoinment of the statute.

As set forth above, Bumgarner's and other similarly situated Magistrates' ability to protect their interests may be impaired or impeded by the disposition of this action, depending upon its outcome. Simply put, "[i]nvalidation of the statute would deprive" Bumgarner and similarly

15

situated Magistrates "of the benefit…provided by the statute." *See Flying J*, 578 F.3d at 572. Indeed, if Senate Bill 2 "is declared unconstitutional or substantially narrowed as a consequence of this litigation," the Magistrates "will be more likely to be forced to choose between adhering to their beliefs and losing their [employment]. Such an interest is sufficiently 'direct, non-contingent, [and] substantial.'" *Lockyer*, 450 F.3d at 441; *see also* Bumgarner Decl., at ¶¶ 6-7, 12. Moreover, if Plaintiffs prevail, Bumgarner and other similarly situated Magistrates lose the statutory protection provided by Senate Bill 2, including the "important layer of protection" from criminal prosecution or civil liability that Senate Bill 2 provides. *Lockyer*, 450 F.3d at 441.

There is no reason for this Court to have Bumgarner and other Magistrates "risk" losing their rights and "wait on the sidelines" while decisions are made that may be directly "contrary to their interests." *Brumfield*, 749 F.3d at 345; *see also Feller*, 802 F.2d at 730 (concluding that "[p]articipation by the intervenors as amicus curiae is not sufficient to protect against" practical impairments since "[a]micus participants are not able to make motions or to appeal the final judgment in the case"). This approach would thwart the very purpose of intervention—"to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield*, 749 F.3d at 345. Thus, Bumgarner has demonstrated that her (and other Magistrates') rights and interests will be practically impaired if intervention is denied.

### 4. Bumgarner's And Other Similarly Situated Magistrates' Interests Are Not Adequately Represented By The Defendant.

Finally, the interest identified by Bumgarner, on behalf of herself and similarly situated Magistrates, is not adequately represented by the Defendant, who has been sued only in his official capacity .[9] The "inadequate representation" requirement of Rule 24(a)(2) is generally "satisfied if

---

[9]     Per communications with counsel, the Defendant is being represented in this matter by the Office of the North Carolina Attorney General.

16

the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as **minimal**." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added); *see also United Guar. Residential Ins. Co. of Iowa v. Phila. Savings Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987); *Defenders of Wildlife*, 281 F.R.D. at 269. In considering this requirement, the Fourth Circuit has adopted two presumptions of adequate representation. First, when the proposed intervenor shares the "same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Commonwealth of Va. v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). Second, in cases where the party who shares the intervenor's objective is a governmental officer, body, or agency, the proposed intervenor bears a "more exacting showing of inadequacy." *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013). Neither of these presumptions should forestall Bumgarner's intervention in this litigation and, even if such presumptions are applied, Bumgarner has sufficiently rebutted them in this case.

Critically, Bumgarner's interests diverge from the Defendant's interests. "In order to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Texas*, 805 F.3d at 662. "[E]ven when a governmental agency's interests appear aligned with those of a particular private group at a particular moment in time, 'the government's position is defined by the public interest, [not simply] the interests of a particular group of citizens.'" *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 Fed. App'x 286, 290-91 (4th Cir. 2009) (citing *Feller*, 802 F.2d at 730). Bumgarner's (and other Magistrates') interests diverge from the Defendant sued in his official capacity, as represented by the North Carolina Attorney General, in "certain key respects" in this litigation.

17

*See Texas*, 805 F.3d at 662. Neither the Defendant, nor any of the senior North Carolina public officials upon whom Plaintiffs' first Complaint was served (including, Gov. McCrory, Atty. Gen. Cooper, or leading members of the North Carolina General Assembly), is or ever will be personally impacted by this Court's judgment on Senate Bill 2—in stark contrast to Bumgarner and other similarly situated Magistrates who are the direct and intended beneficiaries of the statute.

As the direct and intended beneficiaries of Senate Bill 2, Bumgarner and other Magistrates have private and individualized concerns that may diverge from the Defendant in this matter. Such concerns include, *inter alia*, their own religious freedom, conscience, due process, equal protection, and speech rights protected by the United States and North Carolina Constitutions that are implicated by Plaintiffs' lawsuit, their property and due process interests in maintaining a statutory benefit and their jobs to support their families, their specific interests in avoiding any criminal or civil liability, and their personalized interests in protecting their names and judging from inexcusable disparagement and vilification.[10] These interests are unique and individual to Bumgarner (and other similarly situated Magistrates) and diverge from any generic public interest in upholding a law. In fact, Bumgarner previously sued the Defendant's office (also represented by the Attorney General) to protect these individual and constitutional rights and demand religious accommodation on this very subject matter. Bumgarner Decl., at ¶ 14.

Moreover, given the personal adversity to Senate Bill 2 expressed by the primary defender of the statute, it is unlikely that the Defendant, represented by the Attorney General, will adequately champion the competing individual constitutional rights of Bumgarner and other similarly situated Magistrates that are also implicated in this litigation and potentially subject to

---

[10]     Plaintiffs make several specious and disparaging allegations directed at Magistrates like Bumgarner, who has never disavowed her oath or duties in office, and treats persons who appear before her with equality, with fairness and dignity, and without discrimination.

18

divestment by the Defendant in this lawsuit if not independently asserted by Bumgarner. Accordingly, "[t]he lack of unity in all objectives, combined with the real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate, so this requirement of Rule 24(a) is met." *Brumfield*, 749 F.3d at 346 (emphasis in original). Importantly, a proposed intervenor need not show "that the representation by existing parties will **definitely** be inadequate in this regard." *JLS*, 321 Fed. App'x at 289 (emphasis added); *see also Sierra Club*, 945 F.2d at (vacating denial of intervention to private group in environmental waste action even though its interests "may converge" with the state at certain points because their interests "may diverge" at other points and the private group "does not need to consider the interests of all [the state's] citizens" and instead represents "only a subset of citizens"). This Court need not conclude "for sure that the state's more extensive interests will in fact result in inadequate representation, but surely they **might**, which is all the rule requires." *Brumfield*, 749 F.3d at 346 (emphasis added). Such inadequacy is plainly demonstrated here, where Bumgarner previously sued the Defendant's office claiming that providing her a religious accommodation was not just allowed but required under the law. Bumgarner Decl., at ¶ 14.

But, even if one of the presumptions set forth above applies because both Bumgarner and the Defendant are on the "same side" in looking to uphold the constitutionality of Senate Bill 2, there are further reasons demonstrating the inadequacy of the Defendant's representation in this matter. Statements by Gov. McCrory and Atty. Gen. Cooper raise serious questions not only as to whether the State's defense of Senate Bill 2 through the Defendant will be "less vigorous" than Bumgarner's defense of Senate Bill 2, *see Teague*, 931 F.2d at 262, but rather, whether there will be any ongoing defense at all. Importantly, the Defendant's vigorous and spirited defense of Senate Bill 2—and ultimately the protection of Bumgarner's and other Magistrates' rights and interests—

19

cannot be assured in this action since **both the North Carolina Governor and North Carolina Attorney General have indicated adamant public opposition to the law being challenged**. As indicated above, Gov. McCrory vetoed the act, and, at that time, issued this statement:

> I recognize that for many North Carolinians, including myself, opinions on same-sex marriage come from sincerely held religious beliefs that marriage is between a man and a woman. However, we are a nation and a state of laws. Whether it is the president, governor, mayor, a law enforcement officer, or magistrate, no public official who voluntarily swears to support and defend the Constitution and to discharge all duties of their office should be exempt from upholding that oath; therefore, I will veto Senate Bill 2.[11]

Not surprisingly, Plaintiffs have even cited this proclamation in their Complaint. *See* D.E. 1, Compl., ¶ 70. Accordingly, neither Bumgarner nor any other similarly situated Magistrate can count on an adequate defense of Senate Bill 2 by Gov. McCrory.

Nor does the Attorney General provide any further comfort or assurance that Senate Bill 2 will be appropriately defended, or that the private rights of Bumgarner and similarly situated Magistrates will be adequately represented. Atty. Gen. Cooper's initial public response to Plaintiffs' first lawsuit was a statement that his office will defend Senate Bill 2 in court, but that he personally opposes it: "Although Attorney General Cooper personally opposes this legislation, our office will do its duty under the law to defend the state just as it has in more than a dozen recent cases challenging laws passed by the General Assembly."[12] This "I'll defend but personally oppose" approach is problematic for several reasons in this case, and evidences why Bumgarner cannot depend upon the Defendant, in his official capacity, to represent her.

---

[11]     *See* Press Release, Governor McCrory defends Constitution (May 28, 2015), *available at* http://governor.nc.gov/press-release/governor-mccrory-defends-constitution (last accessed Mar. 9, 2016).

[12]     *See, e.g.*, Lawsuit Filed to Challenge Senate Bill 2, CHAPELBORO.COM (Dec. 10, 2015), *available at* http://chapelboro.com/featured/lawsuit-filed-to-challenge-senate-bill-2 (quoting North Carolina Department of Justice spokeswoman, Noelle Talley) (last accessed Mar. 9, 2016).

20

First, Atty. Gen. Cooper's "personal" opposition to Senate Bill 2 is long-standing and is, in fact, very public. His ardent and public opposition has been specifically cited with approval by those seeking to overturn Senate Bill 2.[13] Not only that, Atty. Gen. Cooper effectively invited a constitutional challenge to the legislation after it became law.[14] Holding nothing back, Atty. Gen. Cooper said the legislation was "bad for jobs," "bad for our families," and "bad for the economy." Such public opposition bars his office from adequately representing Bumgarner's own interests.

Second, Atty. Gen. Cooper ceased defending North Carolina's constitution and laws regarding marriage, concluding that the "State of North Carolina will not opposes the cases moving forward" and "It's time to stop making arguments we will lose."[15] "While 'one who is not an original party to a lawsuit may of course become a party by intervention . . . one who is not a party . . . has no right to appeal.'" *Richman*, 104 F.3d at 659 (4th Cir. 1997) (quoting *Karcher v. May*, 484 U.S. 72, 77 (1987)); *see also Ams. United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990) (finding that a "decision not to appeal by an original party to the action can constitute an inadequate representation of another party's interest"). In this case, Atty. Gen. Cooper has already made his opposition known at the outset of this litigation, before any pleadings have been filed by the Defendant in this action, or the State in Plaintiffs' first lawsuit. Bumgarner's and other similarly situated Magistrates' ability to defend the

---

[13]    *See*, *e.g.*, Cooper would veto religious exemption bills if elected, ASHEVILLE CITIZEN-TIMES (Apr. 8, 2015), *available at* http://www.citizen-times.com/story/news/2015/04/08/cooper-veto-religious-exemption-bills-nc-governor/25464221/ (last accessed Mar. 9, 2016).

[14]    *See*, *e.g.*, Roy Cooper speaks out against magistrate opt-out law, WECT.COM (June 12, 2015), *available at* http://www.wect.com/story/29309528/roy-cooper-speaks-out-against-magistrate-opt-out-law (last accessed Mar. 9, 2016).

[15]    *See*, *e.g.*, Attorney General Roy Cooper Won't Defend Gay Marriage Bank, ABC11.com (July 29, 2014), *available at* http://abc11.com/politics/cooper-wont-defend-gay-marriage-ban/224937/ (quoting Attorney General Cooper) (last accessed Mar. 9, 2016).

constitutionality of Senate Bill 2, and represent their own individual constitutional rights (which are adverse to Defendant, as shown by Bumgarner's prior lawsuit against Defendant's office), cannot be held captive to personal whims.

Third, in a unique situation presented here, Atty. Gen. Cooper is actually in the process of running for Governor of North Carolina.[16] Therefore, during the course of this litigation, Atty. Gen. Cooper may, in fact, become Gov. Cooper. As such, any alleged duty-bound defense of Senate Bill 2 may be colored by his pursuit of (or elevation to) the state's highest office. Indeed, in prior public remarks, Atty. Gen. Cooper has stated that, if he were governor, he would veto religious freedom restoration act (RFRA) bills, and, as indicated above, he specifically rejected Senate Bill 2. The rights and interests of Bumgarner and similarly situated Magistrates should not be held hostage to such political whims, aspirations, and expediencies. At the very least, these public statements and representations before (and after) Plaintiffs' first lawsuit was filed certainly indicate that the Atty. Gen. Cooper "can give no assurance" that the Defendant's litigation objectives and Bumgarner's objectives "may not diverge," and he has no ability, at this point of the litigation, to "determine whence this litigation might lead." *See Republican Party of North Carolina v. Martin*, 865 F.2d 1259, at *3 (4th Cir. 1988) (remanding with directions to allow intervention in case being defended by attorney general's office).

Irrespective of the duties placed upon the North Carolina Attorney General by statute, it is self-evident that a "vigorous" defense of the law challenged in this action is not at all assured, which plainly distinguishes this case from the Fourth Circuit's decision affirming the denial of intervention in *Stuart*, or this Court's denial of intervention in *General Synod*, based upon a

---

[16] *See generally* Webpage, Roy Cooper for Governor, *available at* http://www.roycooper.com/ (last accessed Mar. 9, 2016).

defense provided by the Attorney General. *Stuart*, 706 F.3d at 347-48 (denying motion to intervene by crisis pregnancy centers, medical professionals, and post-abortive women looking to defend North Carolina's "Woman's Right to Know Act"); *General Synod*, 2014 WL 5094093, at *2-3 (denying motion to intervene by North Carolina legislators looking to defend the constitutionality of North Carolina's marriage laws). In both cases, the proposed intervention was sought later in the litigation than here—in *Stuart*, after a preliminary injunction had been opposed by North Carolina but nonetheless entered over the state's objection, and in *General Synod*, six months after the complaint was filed. Additionally, neither *Stuart* nor *General Synod* involved proposed intervenors who were indisputably the direct and intended beneficiaries of the statute and who possessed independent individual constitutional rights that were implicated and contravened by the underlying claims in the action, as involved here. Moreover, unlike those cases, Bumgarner and other similarly situated Magistrates possess discrete and individualized rights and property interests that are expressly protected by the statute in question, as discussed above. These critical facts are also sufficient to distinguish the denials of intervention in *Stuart* and *General Synod* from the instant request to intervene. Thus, intervention is appropriate to ensure that the rights and interests of Bumgarner and other similarly situated Magistrates who are the direct and intended beneficiaries of Senate Bill 2 will be adequately represented.

### B.   <u>Alternatively, This Court Should Permit Bumgarner To Intervene.</u>

Even if the Court finds that Bumgarner has not satisfied the requirements for intervention as of right, this Court should nonetheless grant her alternative request for permissive intervention. Bumgarner and other similarly situated Magistrates have claims or defenses that share common questions of law and fact with this action, Bumgarner's intervention will not unduly delay this action, and Bumgarner's intervention will not lead to undue prejudice to any current party but

instead will allow this Court to be fully informed in deciding this action. *See Defenders of Wildlife*, 281 F.R.D. at 269 (reviewing factors for allowing permissive intervention).

### 1. **Bumgarner's Request To Intervene Is Timely.**

As discussed above in Section IV.A.1, Bumgarner's request to intervene is timely.

### 2. **There Is A Sufficient Nexus Between Plaintiffs' Claims And The Issues, Claims, Or Defenses Raised By Bumgarner And Other Similarly Situated Magistrates Regarding Senate Bill 2.**

Rule 24(b) provides that the Court may permit "anyone" to intervene who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The central question presented in this litigation, if Plaintiffs' Complaint survives the pleading stage, is whether Senate Bill 2 is constitutional. As such, Bumgarner's and other similarly situated Magistrates' defense of Senate Bill 2 will involve the primary issues already before the Court. Bumgarner's and other similarly situated Magistrates' claims and defenses are inextricably bound up in the constitutionality of Senate Bill 2 that is at the heart of this action.

Alternatively, Rule 24(b) also allows intervention, on timely motion, by a governmental officer "if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). Plaintiffs' Complaint is based upon government officials like Bumgarner, or other similarly situated Magistrates, exercising their rights under Senate Bill 2. Plaintiffs did not file this Complaint in early June 2015 to enjoin Senate Bill 2 from becoming law. Instead, Plaintiffs waited until nine months after the statute became effective, after Bumgarner and other similarly situated Magistrates exercised and relied upon their recusal rights. Also, as detailed above, the choice to take the recusal was left entirely to each individual magistrate under Senate Bill 2. Accordingly, Plaintiffs' claims are allegedly based upon (at least in part) the actions taken by Bumgarner, and other similarly situated Magistrates, to be

24

recused from performing any marriages pursuant to Senate Bill 2 and the opt-out form they completed. Plaintiffs' challenge of Senate Bill 2 thus challenges actions taken by Bumgarner and other similarly situated Magistrates pursuant to, and in reliance upon, the statute.

> **3. Neither Plaintiffs Nor The Defendant Will Be Prejudiced By Bumgarner's Involvement In This Litigation And No Undue Delay Will Result From Allowing Her To Intervene.**

Bumgarner, on behalf of herself and other similarly situated Magistrates, has acted judiciously and quickly to ensure there is no delay in this litigation or prejudice to the existing parties. Far from prejudicing any parties or delaying this litigation, Bumgarner's involvement will aid the parties and this Court in resolving the important issues at stake in this litigation. Bumgarner's motion to intervene is promptly filed, the case is in its infancy, and Bumgarner seeks to rebut the constitutional challenges raised by Plaintiff and to protect her (and other Magistrates') own rights and property interests. Accordingly, intervention in this matter will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## V. CONCLUSION

For all the foregoing reasons, Bumgarner's Motion to Intervene should be granted, and Bumgarner should be allowed to intervene, individually and on behalf of other similarly situated Magistrates, in the above-referenced case.

DATED: March 10, 2016              Respectfully submitted:

/s/ Jonathan D. Christman           /s/ Stuart D. Sloan
Horatio G. Mihet*                   Stuart D. Sloan
Jonathan D. Christman*           Kenney Sloan & VanHook, PLLC
Liberty Counsel                     111 Heritage hollow Drive
P.O. Box 540774                 Franklin, NC 28734
Orlando, Florida 32854          Tel: (828) 276-1177
Tel: (407) 875-1776            Fax: (828) 276-1178
Fax: (407) 875-0770            stu@ksvlaw.com
hmihet@lc.org / jchristman@lc.org
*Motion for pro hac vice admission pending    *Attorneys for Brenda Bumgarner*

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed via the Court's ECF filing system and therefore service will be effectuated by the Court's electronic notification system upon all counsel or parties of record:

S. Luke Largess
Jacob H. Sussman
John W. Gresham
TIN FULTON WALKER & OWEN, PLLC
301 East Park Avenue
Charlotte, NC 28203
llargess@tinfulton.com
jsussman@tinfulton.com
jgresham@tinfulton.com

Katherine Lewis Parker
TIN FULTON WALKER & OWEN, PLLC
1213 Culbreth Drive
Wilmington, NC 28405
kparker@tinfulton.com

Meghann Burke
BRAZIL & BURKE, P.A.
77 Central Avenue, Suite E
Asheville, NC 28801
meghann@brazilburkelaw.com

*Attorneys for Plaintiffs*

I further certify that a true and correct copy of the foregoing will be sent via e-mail to the following attorneys in the Office of the Attorney General for the State of North Carolina:

Olga E. Vysotskaya de Brito
Amar Majmundar
Special Deputy Attorney General
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
ovysotskaya@ncdoj.gov
amajmundar@ncdoj.gov

*Attorneys for Defendant Marion Warren*

DATED: March 10, 2016      <u>/s/ Stuart D. Sloan</u>

               Stuart D. Sloan
               *Attorney for Brenda Bumgarner*