IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Civil Case No. 1:16-cv-0054

Kay Diane Ansley, Catherine "Cathy" )
McGaughey, Carol Ann Person, Thomas )
Roger Person, Kelley Penn, and Sonja )
Goodman, )
                    Plaintiffs, )
                     )
     v. )
                     )
Marion Warren, in his Official Capacity as )
Director of the North Carolina Administrative )
Office of the Courts, )
                     )
            Defendant. )
_____ )


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

NATURE OF THE CASE ...................................................................1

STATEMENT OF THE FACTS ............................................................2

QUESTIONS PRESENTED..................................................................3

STANDARD OF REVIEW ..................................................................3

ARGUMENT ......................................................................................6

    I.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED
        PURSUANT TO RULES 12(B)(2) AND (6) OF THE FEDERAL
        RULES OF CIVIL PROCEDURE. ...........................................6

          A.     THIS COURT LACKS PERSONAL
              JURISDICTION OVER DIRECTOR WARREN,
              ACTING IN HIS OFFICIAL CAPACITY ......................................6

    II.    PLAINTIFFS' ACTION SHOULD BE DISMISSED FOR LACK
        OF STANDING ...................................................................12

          A.     *FLAST V. COHEN*, 392 U.S. 83 (1968) IS
              LIMITED TO FEDERAL EXPENDITURES
              THAT ARISE UNDER CONGRESS'S TAXING
              AND SPENDING CLAUSE, AND DOES NOT
              PROVIDE PLAINTIFFS, STATE TAXPAYERS,
              THE STANDING NECESSARY TO PURSUE
              THEIR CHALLENGE .................................................13

          B.     PLAINTIFFS FURTHER FAIL THE TWO
              PRONG TEST ANNOUNCED IN *FLAST* USED
              TO DETERMINE THE EXISTENCE OF
              STANDING ...............................................................15

          C.     PLAINTIFFS DO NOT POSSESS STANDING
              UNDER ANY ALTERNATIVE THEORY .................................18

          D.     PRUDENTIAL STANDING IS LIKEWISE
              LACKING...................................................................19

Case 1:16-cv-00054-MOC-DLH   Document 39   Filed 05/05/16   Page 2 of 35

III.     PLAINTIFFS' COMPLAINT SHOULD BE FURTHER DISMISSED FOR FAILURE TO STATE A CLAIM ........................................20

     A.     PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATIONS OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ...........................................20

IV.     VENUE IS NOT PROPER IN THE WESTERN DISTRICT .............................22

     A.     DEFENDANT DOES NOT RESIDE IN THE WESTERN DISTRICT ..................................................................23

     B.     NO SUBSTANTIAL PART OF THE EVENTS OR OMISSIONS GIVING RISE TO THE CLAIM OCCURRED IN THE WESTERN DISTRICT ............................24

CONCLUSION ........................................................................................................... 26

CERTIFICATE OF SERVICE ................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Bain*, 697 F.2d 1213 (4th Cir. 1982) ............................................................... 3

*Allen v. Wright*, 468 U.S. 737 (1984) ................................................................... 4, 12

*Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125 (2011) ................................ 13, 14, 15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 5

*Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812 (4th Cir. 1979),
    *cert. den'd*, 446 U.S. 938 (1980) ......................................................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 5

*Birnbaum v. Blum*, 546 F. Supp. 1363 (S.D.N.Y. 1982) ............................................. 23

*Bowen v. Kendrick*, 487 U.S. 589 (1988) ............................................................. 13, 15

*Brody v. N.C. State Bd. of Elections*,
    2011 U.S. Dist. LEXIS 52520 (W.D.N.C. May 16, 2011) ........................................ 5

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ___, 134 S. Ct. 2751 (2014) ............................. 21

*CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46 (4th Cir. 2011) .......................................... 12

*Chester v. Beard*, No. CIV.A. 07-4742, 2008 WL 2310946 (E.D. Pa. June 2, 2008) ................. 25

*Clapper v. Amnesty Int'l USA*, 568 US ___, 133 S. Ct. 1138 (2013) .......................................... 18

*Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*,
    483 U.S. 327 (1987) .................................................................................... 20

*Crenshaw v. Syed*, 686 F. Supp. 2d 234 (W.D.N.Y. 2010) ........................................ 24

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ................................................................. 20

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ................................................ 14

*D.C. Clegg v. U. S. Treasury Dep't*, 70 F.R.D. 486 (D. Mass. 1976) ........................... 23

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998) .................................. 3

iv

*Doremus v. Board of Ed. of Hawthorne*, 342 U.S. 429 (1952).................................................... 16

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)........................................................ 5

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 US 1 (2004) ...................................................... 19

*Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908)........................................................ 7, 8, 11

*First National Bank v. Board of County Commissioners*, 264 U.S. 450 (1924).......................... 19

*Fitts v. McGhee*, 172 U.S. 516, 19 S. Ct. 269 (1899) ............................................................ 11

*Flast v. Cohen*, 392 U.S. 83 (1968) ...................................................................... 13, 14, 15, 16

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ............................................................... 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) ............... 13

*General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213,
    2014 WL 5871742 (W.D.N.C. filed Oct. 10, 2014) ............................................... 8, 10, 25

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) .................................................. 4

*Greenville County Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*,
    604 Fed. Appx. 244 (4th Cir. 2015)....................................................................... 4, 13

*Hartke v. Federal Aviation Administration*, 369 F. Supp. 741 (E.D.N.Y. 1973) ........................ 23

*Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587 (2007) ...................................... 15, 16

*Heller v. Doe*, 509 U.S. 312 (1993) ................................................................................ 21

*IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604 (M.D.N.C. 2012) ............................ 5

*Kalman v. Cortes*, 646 F. Supp. 2d 738 (E.D. Pa. 2009) ...................................................... 25

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) ....................................................................... 20

*Lucchesi v. State*, 807 P2d 1185 (Colo. Ct. App. 1990) ........................................................ 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................... 4, 13, 18

*Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc*., 784 F. Supp. 306 (D.S.C. 1992) ...... 26

*Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................................... 13

v

*Miller v. Brown*, 462 F.3d 312 (4th Cir. 2006) ............................................................................... 4

*Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975) ..................................................................................... 3

*Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993) ............................................................ 4

*National League of Cities v. Usery*, 426 U.S. 833 (1976) .......................................................... 19

*National Wildlife Federation v. Burford*, 871 F.2d 849 (9th Cir 1989) ....................................... 20

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) ............... 5, 21

*North Dakota v. United States*, 495 U.S. 423 (1990) ................................................................... 21

*O'Neill v. Battisti*, 472 F.2d 789 (6th Cir. 1972) ......................................................................... 24

*Phillips Petroleum Co. v. Shutts*, 472 US 797 (1985) ................................................................. 19

*Read v. Ulmer*, 308 F.2d 915 (5th Cir. 1962) ................................................................................ 6

*S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) .................................................. 7

*Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S. Ct. 2925 (1974) ....... 15

*Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437 (7th Cir. 1992) ........... 8

*Sierra Club v. Morton*, 405 U.S. 727 (1972) .............................................................................. 18

*Stanton-Negley Drug Co. v. Pennsylvania Dep't of Pub. Welfare*,
    No. CIV.A. 07-1309, 2008 WL 1881894 (W.D. Pa. Apr. 24, 2008) ............................... 25

*Stroud v. Benson*, 254 F.2d 448 (4th Cir.), *cert. denied*, 358 U.S. 817,
    79 S. Ct. 28, 3 L. Ed. 2d 59 (1958) ................................................................................ 23

*United States v. Richardson*, 418 U.S. 166 (1974) ..................................................................... 15

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
    454 U.S. 464 (1982) ........................................................................................... 17, 18, 19

*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, (Fed. Cir. 1990),
    *cert. den'd*, 111 S.Ct. 1315 (1991) ................................................................................ 4, 5

*Wangberger v. Janus Capital Group (In re Mut. Funds Inv. Litig.)*
    529 F.3d 207 (4th Cir. 2008) ............................................................................................ 12

vi

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................................................ 22

*Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974) ............................................................ 3

*White Tail Park, Inc. v. Stroube*, 413 F.3d 451 (4th Cir. 2005).................................................... 4

**Statutes**

28 U.S.C. § 1341 ........................................................................................................................ 19

28 U.S.C. § 1391 ........................................................................................................................ 23

28 U.S.C. § 1391(b)(2) ............................................................................................................... 25

28 U.S.C. 1404 ..................................................................................................................... 22, 26

28 U.S.C. § 1406(a) .................................................................................................................. 4, 26

28 U.S.C. § 2201 ........................................................................................................................ 1, 6

42 U.S.C. § 1983 ................................................................................................................... passim

N.C.G.S. § 7A-146 .................................................................................................................... 9, 10

N.C.G.S. § 7A-340 ........................................................................................................................ 8

N.C.G.S. § 7A-341 ........................................................................................................................ 9

N.C.G.S. § 51-5.5 ....................................................................................................................... 24

**Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................................................... 3, 4, 12

Fed. R. Civ. P. 12(b)(2)......................................................................................................... 3, 6, 12

Fed. R. Civ. P. 12(b)(3)............................................................................................................ 4, 22

Fed. R. Civ. P. 12(b)(6)...................................................................................................... passim

Fed. R. Civ. P. 19 ....................................................................................................................... 23

vii

**Constitutional Provisions:**

N.C. Const. art. IV § 12(4)............................................................................10

U.S. Const. amend. 1 ..................................................................... 1, 2, 20, 24

U.S. Const. amend. 11 ..................................................................................... 12

U.S. Const. amend. 14 ........................................................................... passim

U.S. Const. art. I § 8................................................................................14, 16

U.S. Const. art. III............................................................................... passim

**Other Authorities**

Senate Bill 2 ......................................................................................... passim

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## Civil Case No. 1:16-cv-0054

| | |
|---|---|
| Kay Diane Ansley, Catherine "Cathy" McGaughey, Carol Ann Person, Thomas Roger Person, Kelley Penn, and Sonja Goodman, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| Marion Warren, in his Official Capacity as Director of the North Carolina Administrative Office of the Courts, | ) ) ) ) ) |
| Defendant. | ) ) |
| _____ | ) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

In support of its Motion to Dismiss, and pursuant to Rule LCvR 7.1 of the Local Rules of Civil Practice for the Western District of North Carolina, Defendant submits this memorandum of law.

## NATURE OF THE CASE

Plaintiffs bring this action pursuant to 28 U.S.C. § 2201 seeking from this Court a declaratory judgement that "Senate Bill 2," Sess. Law 2015-75, ("Act To Allow Magistrates And Registers Of Deeds To Recuse Themselves From Performing Duties Related To Marriage Ceremonies Due To Sincerely Held Religious Objection"), violates the Establishment Clause of the First Amendment. Pursuant to 42 U.S.C. § 1983, Plaintiffs further contend that Senate Bill 2 violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the

United States Constitution. Plaintiffs' Complaint was filed on March 7, 2016. On April 4, 2016, this Court ordered that Defendant's responsive pleadings were to be due on May 5, 2016.

<u>**STATEMENT OF FACTS**</u>

According to Plaintiffs' Complaint, Plaintiffs Ansley and McGaughey are residents of McDowell County, North Carolina. Plaintiffs Ansley and McGaughey are a same-sex couple who were married on October 14, 2014. [DE 1 ¶ 1] Plaintiffs Carol and Thomas Person are residents of Moore County, North Carolina. Plaintiffs allege that Mr. and Mrs. Person are an interracial couple, who were married during the 1970s after a federal district court ordered that their marriage be performed by North Carolina magistrates. [DE 1 ¶ 2] Plaintiffs Penn and Goodman are a same-sex couple who, according to the Complaint, "live and work together and are engaged to be married." Plaintiffs' Complaint does not allege that Penn and Goodman applied and were denied a marriage in North Carolina. [DE 1 ¶ 3]

Plaintiffs name the Honorable Marion Warren, in his official capacity as the Director of the North Carolina Administrative Office of the Courts, as the sole Defendant. Director Warren's duties are strictly prescribed by statute, and he assumes no enforcement role with respect to Senate Bill 2.

The predicate to Plaintiffs' claim is their assertion that as same-sex couples, Senate Bill 2 unconstitutionally deprives them of the right to be married by magistrates, and in particular, magistrates of McDowell and Swain Counties, or equally treated by magistrates who volitionally choose to recuse themselves from performing any marriage as a result of closely held, personal, religious convictions. According to Plaintiffs, such a recusal by a magistrate, or collection of magistrates, violates their respective First and Fourteenth Amendment rights. Plaintiffs argue that Defendant has inappropriately expended public funds in support of a religious purpose; to

2

wit, funds used to ensure that magistrates are available to perform marriages in any county, and funds used toward the compensation of magistrates who have renounced their previous recusals under Senate Bill 2. Plaintiffs further allege that their Constitutional rights are violated by Defendant's performance of his required administrative duties, in adherence to the laws enacted by the General Assembly.

## QUESTIONS PRESENTED

1. **Whether This Court Possesses Jurisdiction To Entertain Plaintiffs' Action, Or Whether Plaintiffs' Complaint Should Instead Be Dismissed Pursuant To Rules 12(b)(2) and (6) Of The Federal Rules of Civil Procedure.**

2. **Whether Plaintiffs' Complaint Should Be Dismissed For Their Lack Of Standing.**

3. **Whether Plaintiffs' Complaint Should Be Dismissed For A Failure To State A Claim Upon Which Relief May Be Granted.**

4. **Whether Plaintiffs' Complaint Should Be Dismissed For Improper Venue.**

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the burden of proving subject matter jurisdiction is on the party asserting jurisdiction. *See Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975). "[T]he court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A motion filed under Rule 12(b)(2) of the Federal Rules of Civil Procedure tests a court's jurisdiction over an individual. In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). A plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). Although a Plaintiff who opposes a motion to dismiss for lack of

3

personal jurisdiction is entitled to have all reasonable inferences drawn in his favor, the court is not required to look solely to plaintiff's proof in drawing those inferences. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993).

As it relates to issues of standing, federal courts possess restricted powers to adjudicate certain categories of cases and controversies. U.S. Const. Art. III. The existence of a plaintiff's standing to commence a federal action is an essential facet of the case or controversy requirement, which exists only when a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). If a plaintiff has not suffered an injury, there is no standing, the court is without jurisdiction to consider the action, *see Allen v. Wright*, 468 U.S. 737, 750-66 (1984), and the matter should then be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g., White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). That is true as "Article III gives federal courts jurisdiction only over cases and controversies," and standing is "an integral component of the case or controversy requirement." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (internal quotation marks omitted); *see, e.g., Greenville County Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 Fed. Appx. 244, 250 (4th Cir. 2015). Plaintiffs bear the burden of establishing the requisite elements of standing, must support each element of standing with sufficient factual allegations. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In the absence of the requisite standing, the lawsuit must be dismissed. *Id*. at 560.

Pursuant to Rule 12(b)(3), a court may dismiss a complaint for improper venue. 28 U.S.C. § 1406(a). Venue statutes serve "the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the

4

defendant's residence or from the place where the acts underlying the controversy occurred." *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1576 (Fed. Cir. 1990), *cert. den'd*, 111 S.Ct. 1315 (1991). "The burden is on the plaintiff to establish . . . venue in the judicial district where the action is brought." *IHFC Props., LLC v. APA Mktg., Inc.*, 850 F. Supp. 2d 604, 615 (M.D.N.C. 2012); *see Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. den'd*, 446 U.S. 938 (1980). When considering a motion to dismiss for improper venue, a court accepts the facts alleged in the complaint as true and draws reasonable inferences in the plaintiff's favor. *Brody v. N.C. State Bd. of Elections*, 2011 U.S. Dist. LEXIS 52520, 6-7 (W.D.N.C. May 16, 2011) (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). The 12(b)(6) standard for dismissal requires the articulation of facts that, if true, demonstrate a claim that the plaintiff may plausibly be entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

**ARGUMENT**

I. **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULES 12(B)(2) AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

A. **This Court Lacks Personal Jurisdiction Over Director Warren, Acting In His Official Capacity.**

According to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party's complaint may be dismissed for lack of personal jurisdiction. It is elementary that if court has no jurisdiction over defendant, defendant has unqualified right to have an order entered granting its motion to dismiss. *Read v. Ulmer*, 308 F.2d 915 (5th Cir. 1962). Here, although Plaintiffs invoke 28 U.S.C. § 2201 and 42 U.S.C. § 1983 to establish this Court's jurisdiction over the claim, they have failed to allege facts sufficient to draw the necessary connection between Director Warren and the enforcement of Senate Bill 2. Specifically, Plaintiffs have failed to allege that Director Warren has actually taken, or threatened to take, any action to deny them of their asserted rights as taxpayers, or as same-sex couples who wish to be married by a magistrate. Absent allegations that Director Warren enforced the subject statutes, Plaintiffs' claims under 42 U.S.C. § 1983 should be dismissed pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure.

42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

6

declaratory decree was violated or declaratory relief was unavailable.

Under § 1983, claimants must establish that a person acted in such a way as to deprive them of rights, privileges, or immunities secured by the Constitution and laws. *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908), permits a federal court to issue prospective and injunctive relief against a state officer to prevent ongoing violations of federal law, even when the Court would not otherwise maintain jurisdiction under the 11th Amendment. The *Ex parte Young* exception is directed at officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings… to enforce against parties affected [by] an unconstitutional act." 209 U.S. at 155-56.

Application of the *Ex parte Young* exception requires a demonstration of a "special relationship" between the officers being sued in the present action, and the challenged state law. *Id.* at 157. This requirement of "proximity to and responsibility for the challenged state action," *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008), is not met when an official merely possesses "[g]eneral authority to enforce the laws of the state." *Id.* at 331 (citation omitted). The Supreme Court has specifically delineated the test to determine whether a public officer is a proper defendant in official-capacity actions challenging the constitutionality of a state statute:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.

7

209 U.S. at 157, 28 S. Ct. at 453 (internal citations omitted). The jurisprudence on this issue has been constant and pervasive.[1] Plaintiffs must show that Defendant has some connection with the enforcement of Senate Bill 2. Absent a showing that Defendant play a role in the enforcement of that law, Plaintiffs fail to demonstrate that Defendant has engaged in any ongoing violation of the U.S. Constitution. Consequently, Defendant does not qualify as a "person" for the purposes of a § 1983 action.

In the instant matter, Plaintiffs allege that Defendant is the "Director of the North Carolina Administrative Office of the Courts, which manages and oversees the administrative services provided to the Judicial Branch of North Carolina's more than 6,000 employees and hundreds of courthouses and facilities in every county of the state." [DE 1 ¶ 4] According to Plaintiffs, Defendant is sued for "conduct taken under color of state law that violates the First and Fourteenth Amendments," [DE 1 ¶ 4] in that he has undertaken "unconstitutional spending" in defiance of this Court's Order in *General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213, 2014 WL 5871742 (W.D.N.C. filed Oct. 10, 2014). However, Plaintiffs have made no factual allegation that Defendant has taken, or threatened, any action to enforce Senate Bill 2 or to defy this Court's Order in *General Synod*.

Indeed, by virtue of North Carolina's General Statutes and the State's Constitution, Defendant is not empowered to enforce Senate Bill 2. N.C.G.S. § 7A-340 establishes "a State

---

[1] *See, e.g.*, *Sherman v. Cmty. Consol. Sch. Dist. 21 of Wheeling Twp.*, 980 F.2d 437, 440-42 (7th Cir. 1992) (applying *Ex parte Young* test to request for declaratory relief under 42 U.S.C. § 1983 and holding attorney general was not proper defendant when "[p]laintiffs ha[d] not articulated any theory under which *Ex parte Young* supports a suit against the Attorney General, who has never threatened the [plaintiffs] with prosecution, and as far as we can tell has no authority to do so"); *See also Lucchesi v. State*, 807 P.2d 1185, 1187 (Colo. Ct. App. 1990), the plaintiff's complaint included, among other claims, claims under 42 U.S.C. § 1983 challenging the constitutionality of Colorado taxing statutes and seeking only declaratory relief. The court explained that in order for the official capacity defendants to be "persons" for the purposes of § 1983, "[t]he persons sued… must be those whose duties include implementation or enforcement of the statute being assailed." *Id.* at 1194.

8

office to be known as the Administrative Office of the Courts. It shall be supervised by a Director, assisted by an assistant director." In turn, N.C.G.S. § 7A-341 provides that the "Director shall be appointed by the Chief Justice of the Supreme Court, to serve at the pleasure of the Chief Justice." The Director's duties are set out with N.C.G.S. § 7A-146, which include administrative duties such as compiling data associated with financial operations; prescribing efficient business methods; performing audits and making recommendations to ensure the efficiency and efficacy of the Judicial Branch; making arrangements for the physical facilities and equipment of the Judicial Branch; analyzing and entering into vendor contracts; making arrangements for the payment of interpreters and experts; issuing photographic identification cards to appropriate Judicial personnel; and, establishing appropriate per mile reimbursement for transportation by privately owned vehicles in accordance with rates set out by the Internal Revenue Service. None of the duties delegated by N.C.G.S. § 7A-146 provide the Director the responsibility or authority to enforce any law, much less Senate Bill 2. Instead, N.C.G.S. § 7A-146 authorizes the Director to engage in those specific administrative activities designed to facilitate the administration of justice.

Plaintiffs will likely attempt to confuse the plain meaning of N.C.G.S. § 7A-146 by suggesting that because Defendant has made expenditures related to the overall administration of justice in North Carolina, he has enforced the provisions of Senate Bill 2. However, such an argument is misplaced. The Director of the Administrative Office of the Courts cannot unilaterally decide what is (or what is not) an appropriate expenditure of funds; cannot unilaterally decide what is (or what is not) constitutional; and, cannot decide to comply with only some General Statutes. The constitutionality of a statute or enforcement thereof is decided by the Courts, not Defendant. In that sense, Defendant's administrative role is far to attenuated

9

from the enactment of Senate Bill 2 to constitute "enforcement" under 42 U.S.C. § 1983. Instead, Defendant is obligated to abide by the laws passed by the General Assembly, be they related to the compensation of judicial personnel, the arrangements associated with the proper administration and availability of Judicial Branch personnel, or the expenditure of funds necessary to comply with State law, unless those laws are decreed to be unconstitutional by a court of competent jurisdiction.

In contrast, according to Article IV, section 12(4) of our State's Constitution, it is the General Assembly that shall "by general law uniformly applicable in every local court district of the State, prescribe the jurisdiction and powers of the District Courts and Magistrates." Likewise, N.C.G.S. § 7A-146 provides that the "chief district judge, subject to the general supervision of the Chief Justice of the Supreme Court, has administrative supervision and authority over the operation of the… magistrates in his district." In contrast to these binding legal provisions, the administrative actions taken by Defendant cannot be fairly interpreted as "enforcement" under § 1983.

In that vein, it should be noted that although Plaintiffs allege that Defendant has made expenditures under Senate Bill 2 to further "religious exemption from the oath of office for all of McDowell County's magistrates, and to support and facilitate their renunciation of the judicial oath to be bound by the federal constitution," [DE 1 ¶ 79], that allegation does not advance Plaintiffs' position in regard to AOC Director Warren's enforcement capacity. If such funds were in fact expended, they were so expended explicitly to comply with this Court's Order in *General Synod* that effectively enjoined the State from enforcing such laws that prohibited a person from marrying another person of the same gender, or that prohibited recognition of same-sex marriages lawfully solemnized in other States, Territories, or a District of the United States.

10

Likewise, while Plaintiffs complain that Defendant has expended "tax dollars into the state employees' retirement system, both the employee and employer contributions, to purchase service credits for the gap in service from the time of each magistrate resigned - - rather the [sic] accept and uphold the federal constitution after this Court's ruling" in *General Synod*, [DE 1 ¶ 84], the reality is that Senate Bill 2, Section 5, sub-part 3 specifically provides that the Judicial Department, and not Defendant, is actually responsible for such payments and reimbursements. [DE 1 ¶ 65] Instead of pleading facts to substantiate their claims, Plaintiffs have made generalized and unsupported averments.

In that regard, the Supreme Court in *Ex parte Young* expressly and specifically rejected the type of general assertions offered by Plaintiffs in their Complaint. In laying out the "some connection with the enforcement of the act" test, the Court quoted its prior decision in *Fitts v. McGhee*, 172 U.S. 516, 19 S. Ct. 269 (1899):

> In the present case, as we have said, neither of the State officers named held any special relation to the particular statute alleged to be unconstitutional. They were not expressly directed to see to its enforcement. If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was in a general sense, charged with the execution of all its laws, and the latter as attorney general, might represent the state in litigation involving enforcement of its statutes…

*Ex parte Young*, 209 U.S. at 157, 28 S. Ct. at 452-53 (*quoting Fitts*, 172 U.S. at 530, 19 S. Ct. at 274-75).

Plaintiffs have failed to demonstrate with their Complaint that Defendant has a connection with the enforcement of Senate Bill 2. Stated alternatively, in light of the test

articulated in *Ex parte Young*, Plaintiffs have made no allegation to sufficiently connect Defendant "with the duty of enforcement to make [him] a proper party." *Id.* at 161, 28 S. Ct. 454. In turn, because Plaintiffs have failed to establish the requisite connection with the enforcement of the allegedly unconstitutional statutes, they have further failed to demonstrate that Defendant has engaged in an ongoing violation of the federal Constitution sufficient to qualify as a "person" under 42 U.S.C. § 1983. These failures warrant dismissal of Plaintiffs' Complaint pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure.

## II. PLAINTIFFS' ACTION SHOULD BE DISMISSED FOR LACK OF STANDING.

Even if Plaintiffs avoid dismissal by virtue of Eleventh Amendment immunity, this action should nevertheless be dismissed pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure for Plaintiffs' lack of standing to sue, and the Court's attendant lack of subject matter jurisdiction.

Federal courts weigh both the constitutional and prudential aspects of a plaintiff's alleged standing. To possess constitutional standing, a plaintiff must be injured by the defendant, and a federal court must be able to redress the injury. *See, e.g., Wangberger v. Janus Capital Group (In re Mut. Funds Inv. Litig.)*, 529 F.3d 207, 216 (4th Cir. 2008). The doctrine of prudential standing refers to several judicially-created limits on federal jurisdiction, "such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (*citing Allen v. Wright*, 468 U.S. 737, 751 (1984)). Plaintiffs bear the burden of establishing the requisite elements of standing, and supporting each element of standing with sufficient factual allegations.

12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).   In the absence of the requisite standing, the lawsuit must be dismissed. *Id*. at 560.

A.    ***Flast v. Cohen*, 392 U.S. 83 (1968) Is Limited To Federal Expenditures That Arise Under Congress's Taxing and Spending Clause, And Does Not Provide Plaintiffs, State Taxpayers, The Standing Necessary To Pursue Their Challenge.**

To establish constitutional standing, Plaintiffs must generally demonstrate that:

"(1) [they have] suffered an "injury in fact" that is (a) concrete and particularized and, (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and, (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citations omitted); *Greenville County Republican Party Exec. Comm. v. Greenville Cnty. Election Comm'n*, 604 Fed. Appx. 244, 250 (4th Cir. 2015).  "[T]he mere fact that a plaintiff is a taxpayer is not generally deemed sufficient to establish standing in federal court." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011).  Generally, taxpayers lack standing to commence federal actions on the basis of their taxpayer status. *Massachusetts v. Mellon*, 262 U.S. 447 (1923).   In the instant action, Plaintiffs allege only that they "have standing as state taxpayers under *Flast v. Cohen*, 392 U.S. 83 (1968) and its progeny, as they challenge the spending of tax funds by Defendant Warren as approved by the state legislature for the express and primary religious purpose in violation of the First Amendment." [DE 1 ¶ 6]   It is noteworthy that *Flast* provides only a "narrow exception" to "the general rule against taxpayer standing." *Bowen v. Kendrick*, 487 U.S. 589, 618, (1988).  Here, Plaintiffs' reliance on *Flast* to establish standing to sue the State is misplaced, as the exceptions announced

13

in that case are inapplicable.  Further, even if *Flast* did apply, Plaintiffs nevertheless fail the standing test announced in that case.

In *Flast*, federal taxpayers were found to have sufficient standing to maintain their litigation in the federal courts since they contested "an exercise by Congress of its power under Article I, Section 8, to spend for the general welfare," "the challenged program involve[d] a substantial expenditure of federal tax funds," and the taxpayers alleged that the challenged expenditures violated the Establishment Clause. *Flast*, 392 U.S. at 103.   In turn, in *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006), state taxpayers challenged various tax provisions of an Ohio tax scheme.  The U.S. Supreme Court unanimously dismissed *Cuno* on the grounds that the plaintiffs, as state taxpayers, lacked standing in the federal courts to challenge Ohio's state investment tax credits.   The plaintiff-taxpayers in that case were found to have fallen short in asserting an injury redressabl[e] by an injunction against the Ohio tax credit.  *Id*. Affording state taxpayers the opportunity to challenge state "tax and spending provisions" is "contrary to the . . . modest role Article III envisions for federal courts*." Id*. at 346.

The Supreme Court further reestablished the notion that state taxpayers do not have standing to pursue claims in federal court in  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 130 (2011).  In *Winn*, Arizona taxpayers mounted an Establishment Clause challenge to Arizona's income credits for contributions ("STO" tax credits) that could be used to subsidize attendance at private, religious schools. *Id*.  The Arizona taxpayers claimed standing under *Flast* and its rule that taxpayers who might otherwise lack standing nevertheless have the right to challenge, in federal court, government outlays that violate the Establishment Clause. *Id*.  The opinions of both the majority and dissent in *Winn* suggest that in Establishment Clause challenges, state taxpayers lack standing to assert claims in federal court. *Id*. at 144-146; 153-

14

155.  With *Winn*, the Supreme Court specifically held "the case-or controversy limitation on federal jurisdiction imposed by Article III" denies the Arizona taxpayers standing to challenge the income tax credit offered by Arizona. *Id*.

Plaintiffs here rely exclusively upon their state taxpayer status to assert standing before this Court.  Based on the clear jurisprudence on this issue, including *Flast*, Plaintiffs' assertions are without merit, and their complaint should be dismissed as a consequence.

### B.  Plaintiffs Further Fail The Two Prong Test Announced In *Flast* Used To Determine The Existence of Standing.

Even if it is assumed, *arguendo* that these state taxpayers might attain standing, the exceptions announced in *Flast* are very narrow.  *Bowen v. Kendrick*, 487 U.S. 589, 618 (1988); *United States v. Richardson*, 418 U.S. 166 (1974), and *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S. Ct. 2925 (1974).  In order to fall within this narrow exception, plaintiffs must establish two prerequisites.  First, there must be a "logical link" between Plaintiffs' taxpayer status "and the type of legislative enactment attacked." *Flast*, 392 U.S. at 102.  Second, there must be "a nexus" between the Plaintiffs' taxpayer status and "the precise nature of the constitutional infringement alleged." *Id*. at 102.

Claims II and III of Plaintiffs' Complaint allege that the State has violated the Fourteenth Amendment of the U.S. Constitution, yet that assertion cannot be premised upon the narrow exceptions regarding taxpayer standing found in *Flast*.  The U.S. Supreme Court was clear that *Flast* did not extend to actions other than those  arising under the Establishment Clause, when it stated that "[w]e have declined to lower the taxpayer standing bar in suits alleging violations of any constitutional provision apart from the Establishment Clause."  *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 609 (2007).  Therefore, Plaintiffs' Equal Protection and Due

Process Claims (Claims II and III), [DE 1 ¶¶ 102-119], fail as a matter of law for a lack of standing.

Meanwhile, Claim I of Plaintiffs' Complaint, alleging violations of the Establishment Clause, fails both prongs of the *Flast* standing test. First, a "logical link" between Senate Bill 2 and Plaintiffs' taxpayer status is absent. Contrary to the factual scenario presented in *Flast*, where the standing was found only when Congress appropriated money under the taxing and spending clause of Art. I, § 8, of the U.S. Constitution, Senate Bill 2 does not establish a new appropriations program under the General Assembly's tax and spending powers. Plaintiffs here complain that the Judicial Department will pay for reappointed magistrate's retirement contributions to cover the gap in the reappointed magistrate's service, [DE 1 ¶ 65], and that some public money is being spent by the Judicial Department "to bring a willing magistrate from another county to perform marriages in the county—an act that requires the expenditure of state funds." [DE 1 ¶¶ 63, 79-80] That argument is inaccurate, as the type of public expenditures Plaintiffs complain about to establish their standing amount to, at most, "an incidental expenditure of tax funds" by the Judicial Department from general appropriations. Such an "incidental expenditure" does not serve to establish the necessary nexus between a taxpayer and the challenged statute. *Flast*, 392 U.S. at 102; *see also Doremus v. Board of Ed. of Hawthorne*, 342 U.S. 429 (1952) (statute providing for the recitation of Bible passages in public schools involved, at most, an incidental expenditure of tax funds); *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. at 135; *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. at 600-601 (U.S. 2007) (plaintiff's status as a federal taxpayer was too generalized and attenuated to confer standing to assert an Establishment Clause challenge to discretionary expenditures by the Executive Branch from general appropriations).

16

Secondly, Plaintiffs also fail the nexus requirement mandated by *Flast*. As previously noted, Plaintiffs Ansley and McGaughey were married on October 14, 2014, while Plaintiffs Carol Person and Thomas Person were married in 1970s. Given the facts as alleged by Plaintiffs, Senate Bill 2 allowance of magistrate recusals from performing marriages has caused these couples no legally cognizable harm. Plaintiffs Kelley Penn and Sonja Goodman are not married yet, however they have not alleged that they have applied for or been denied a marriage as a consequence of magistrate recusals. As our Supreme Court pointed out, such generalized grievances do not suffice to establish standing:

> Although respondents claim that the Constitution has been violated, they claim nothing else. They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees. That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms.

*Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 485-486 (1982). The fact that Plaintiffs' Complaint is couched in terms of violations of the Establishment Clause does not, by itself, establish the requisite nexus. Indeed, the Supreme Court specifically noted that, "a claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." *Id*. As Plaintiffs have failed to claim a legal injury sufficient to establish standing in this action, this Court should dismiss their Complaint for lack of subject matter jurisdiction.

**C.      Plaintiffs Do Not Possess Standing Under Any Alternative Theory.**

To otherwise qualify as a plaintiff with standing to litigate, a person must show, first and foremost, an invasion of a legally protected interest that is "concrete and particularized," and "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 US 555, 560 (1992). A threat of injury "must be certainly impending" to constitute injury in fact. *Clapper v. Amnesty Int'l USA*, 568 US ___, __, 133 S. Ct. 1138, 1147 (2013). Although there is no precise definition, imminence requires that "the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan* at 564 n.2. Moreover, "the 'injury in fact' test requires more than an injury to a cognizable interest" as "[i]t requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972). The party seeking review must allege facts showing that he himself was adversely affected. *Id*. at 740. Plaintiffs here have failed to do so.

Plaintiffs do claim that they are generally fearful that one day they, and other similarly situated citizens, may need to appear in other civil or criminal proceedings before a magistrate judge who might harbor the belief that they are not due the full array of rights accorded to all citizens. [DE 1 ¶¶ 81-85, 101-119] In other words, Plaintiffs express their general apprehension about possible, future, and unknown unconstitutional acts by magistrates. Even though it is framed in constitutional terms, such a nebulous fear fails to amount to the concrete injury that may otherwise confer standing under Art. III. Plaintiffs' suggested approach to standing would arguably allow a correction of a constitutional wrongdoing, in the absence of any concrete and immediate injury. Yet, that approach that has been squarely rejected by the Supreme Court:

> Implicit in the foregoing is the philosophy that the business of the
> federal courts is correcting constitutional errors, and that "cases
> and controversies" are at best merely convenient vehicles for doing

18

> so and at worst nuisances that may be dispensed with when they
> become obstacles to that transcendent endeavor. This philosophy
> has no place in our constitutional scheme.

*Valley Forge Christian College*, 454 U.S. at 489.  Plaintiffs' failure to establish their standing to

sue under any alternative theory warrants dismissal of their claim.

### D.       Prudential Standing is Likewise Lacking.

Prudential standing embodies judicially self-imposed limits on the exercise of federal

jurisdiction. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 US 1, 11-12 (2004).  The judiciary

seeks to avoid deciding questions of broad social import if no individual rights would be

vindicated, and to limit access to the federal courts to those litigants best suited to assert a

particular claim.  *Phillips Petroleum Co. v. Shutts*, 472 US 797, 804 (1985).

Considerations of federalism should guard against granting standing to Plaintiffs in this

case.  Plaintiffs seek a federal ruling that potentially impacts State expenditures, which presents a

separation of powers concern.   State governments, no less than the federal government, possess

certain unalienable powers that the other may not encroach upon. *See generally National League

of Cities v. Usery*, 426 U.S. 833 (1976).  Congress has recognized that a state's power of taxation

is a basic attribute of sovereignty by enacting the Tax Injunction Act, 28 U.S.C. § 1341 (1982).

A sovereign state must have the authority to determine how tax revenues are to be spent,

extending to the total conduct of a state's fiscal affairs.   Well-established Supreme Court

precedent recognizes the need for judicial restraint in matters involving a state's fiscal affairs.

*First National Bank v. Board of County Commissioners*, 264 U.S. 450 (1924).  Whatever the

merits of Plaintiffs' claim, they lack prudential standing to bring this action.

Moreover, as Plaintiffs' complaint raises nothing more than abstract questions that

amount to generalized grievances, their claims are more appropriately resolved by the legislative

and executive branches.  *National Wildlife Federation v. Burford*, 871 F.2d 849, 852 (9th Cir 1989).  This Court should dismiss Plaintiffs' Complaint, or abstain on prudential grounds, from deciding this case that asserts generalized grievances over governmental conduct, and by extension triggers federalism concerns regarding a state's ability to execute a tax scheme.

## III.  PLAINTIFFS' COMPLAINT SHOULD BE FURTHER DISMISSED FOR FAILURE TO STATE A CLAIM.

### A.  Plaintiffs Fail to State a Claim for Violations of the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs have alleged that the State violated the Establishment Clause of the First Amendment.  The First Amendment provides that "Congress shall make no law respecting an establishment of religion…."  Generally, a statute which impacts religion must have a secular purpose; it must neither advance nor inhibit religion in its principal or primary effect; and, it must not foster an excessive entanglement with religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612-613 (1971).  Yet, the Supreme Court reasoned that under circumstances, such as here, where a law facially amounts to a permissible legislative accommodation of religion which "fits within the corridor between the Religion Clauses," application of the *Lemon v. Kurtzman* test might not be necessary. *Cutter v. Wilkinson*, 544 U.S. 709, 720, 726-27 (2005).  Regardless of whether this State is even required to meet all prongs of this test, it is a well-established principle that "the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause."  *Corp. of Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 334 (1987).

Plaintiffs fail to plead sufficient facts to state a claim that Senate Bill 2 is anything other than a permissible governmental attempt to accommodate religious beliefs and practices of some North Carolina magistrates.  Plaintiffs' claim to the contrary is based on bare factual assertions

20

and legal inferences without the specific factual allegations that are necessary to survive a motion to dismiss. Plaintiffs' legal conclusions and factual deductions regarding the possible impact of Senate Bill 2, [DE 1 ¶¶ 87-99], should be disregarded by the Court in its 12(b)(6) analysis. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250 (4th Cir. 2009). Plaintiffs' action is not saved from dismissal by their conclusory statement that Senate Bill 2 "establishes a sincerity test for a magistrate's religious-based recusal" [DE 1 ¶ 96] As outlined *supra*, Plaintiffs simply lack standing to challenge the alleged "sincerity test." Moreover, they have failed to allege any facts which could support a conclusion that any of the magistrates referenced in Plaintiffs' Complaint are insincere in their respective beliefs. *See, e.g., Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. ___, ___, 134 S. Ct. 2751, 2774 (2014).

As to Plaintiffs' claim that Senate Bill 2 violates the Equal Protection Clause of the U.S. Constitution, it also fails the factual and legal sufficiency test encompassed by Rule 12(b)(6). Senate Bill 2 does not single out "[g]ay or lesbian citizens like Plaintiffs," [DE 1 ¶ 104], but rather simply allows magistrates to recuse themselves from performing all marriages. Because that law does not target a particular class of individuals, there exist no Equal Protection concerns. Even if Senate Bill 2 classified along the lines of the purported class of citizens, such classifications neither involve a fundamental right nor create a suspect class of individuals, and is strongly presumed to be constitutionally valid. *North Dakota v. United States*, 495 U.S. 423, 433 (1990). The presumption of legislative validity requires a challenger "to negative every conceivable basis which might support it." *Heller v. Doe*, 509 U.S. 312, 320 (1993). "A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. '[A] legislative choice is not subject to courtroom factfinding and may be based on

21

rational speculation unsupported by evidence or empirical data.'" *Id.* (internal citations and quotations omitted). Plaintiffs fail to overcome that presumption.

Plaintiffs additionally allege violations of their substantive due process rights in their last Claim for Relief. [DE 1 ¶¶ 111-119]. In that Claim, Plaintiffs assert only that "Senate Bill 2 denies gay and lesbian citizens their fundamental right to access government services." [DE 1 ¶117] Yet, not only do Plaintiffs fail to enumerate the eponymous "governmental rights," their Complaint fails to plead sufficient facts and to demonstrate that the alleged "right to government services" is a fundamental right protected by substantive due process, or that their right to access these unnamed government services is violated in any specific and concrete way by the enactment of Senate Bill 2. When an asserted right is not fundamental, the due process clause of the Fourteenth Amendment dictates that any governmental interference with that right need only be rationally related to legitimate government interests to survive a constitutional challenge. *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). Since Senate Bill 2 does not interfere with a fundamental right, absent any contrary specifications by Plaintiff, it must be viewed as constitutionally sound. As a consequence, Plaintiffs' Complaint should be dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV.     VENUE IS NOT PROPER IN THE WESTERN DISTRICT.

Additionally, Plaintiffs have improperly selected this Court as venue for their claim. Pursuant to Federal Rule of Civil Procedure 12(b)(3), the matter should therefore be dismissed, or in the alternative, transferred to the United States District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1404. This is true as a civil action based on federal-question jurisdiction, such as the instant action, may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in

22

which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated; or, (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391.  Accordingly, venue in the Western District is improper.

### A.  Defendant Does Not Reside In The Western District.

Plaintiffs contend that venue in the Western District is proper because "Defendant Warren's office manages and oversees judicial services provided throughout the state, including every state judicial district located in the Western District."  [DE 1 ¶ 7] Plaintiffs' conclusions therefrom regarding venue are mistaken: 28 U.S.C. § 1391 "was not intended to permit forum-shopping, by suing a federal official wherever he could be found." *Hartke v. Federal Aviation Administration*, 369 F. Supp. 741, 746 (E.D.N.Y. 1973).

The residence of a public official sued in his official capacity is his official residence, that is, the place where his office is located and where he ordinarily performs his official duties. *Stroud v. Benson*, 254 F.2d 448 (4th Cir.), *cert. denied*, 358 U.S. 817, 79 S. Ct. 28, 3 L. Ed. 2d 59 (1958) ("finding that "[i]n the case of the Secretary the answer to the jurisdictional question is clear. As his official residence is in the District of Columbia, only there may he be sued."), *superseded on other grounds by* Fed. R. Civ. P. 19; *Hartke v. Federal Aviation Administration* ("The statutory reference to the district in which a defendant "resides" may not reasonably be construed to include every district where some subordinate has an office.  The residence of a public official sued in his official capacity is his official residence; that is, the place where his office is maintained");  *D.C. Clegg v. U. S. Treasury Dep't*, 70 F.R.D. 486 (D. Mass. 1976) (residence of public official being sued in his official capacity is his official residence); *Birnbaum v. Blum*, 546 F. Supp. 1363, 1366 (S.D.N.Y. 1982) (for venue purposes, the place

23

where state officials perform official duties is the official residence); *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 237 (W.D.N.Y. 2010) ("for . . . purposes of venue, state officers 'reside' in the district where they perform their official duties, therefore action against doctors … was transferred to a District where the doctors were employed"); *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972) (finding that the "residence" of the Supreme Court of Ohio, for purposes of establishing venue, "is in the place where it performs its official duties"). Defendant performs his official duties from the Administrative Office of the Court's office location in the North Carolina Judicial Center, in Raleigh. Therefore, he is a resident of Raleigh, for the purposes of this action. The filing of the action in the Western District is therefore subject to dismissal for improper venue.

> **B.  No Substantial Part Of The Events Or Omissions Giving Rise To The Claim Occurred In the Western District.**

Plaintiffs additionally allege that venue is proper in this District because "some of the challenged spending under the statute that violates the First Amendment has occurred in the Asheville Division of the Western District." [DE 1 ¶ 7]. Notably, Plaintiffs do not allege that that they underwent any specific burden, were denied marriage licenses, or were denied the ability to apply for marriage licenses in the Western District as a result of N.C.G.S. § 51-5.5. Instead, Plaintiffs complain of their generalized fear of some future harm that may come from that statute. Yet, to the extent the alleged harm lies merely in the passage of N.C.G.S. § 51-5.5, that event occurred in Raleigh, within jurisdiction of the Eastern District.

Plaintiffs surmise that there could be some future harm to them in the Western District, but they rely on generalized conjectures and have not pled sufficient supporting facts to show that their inferences are particularized and unique to this District. Indeed, Plaintiffs readily and

24

appropriately admit that the challenged law applies statewide, to any given county in North Carolina. [See, e.g., DE 1¶¶ 83, 97]  Under these circumstances, venue is proper in the Eastern District, where N.C.G.S. § 51-5.5 was enacted, rather than Western District where Plaintiffs alleged that they may eventually experience some nebulous harm.  *See Kalman v. Cortes*, 646 F. Supp. 2d 738, 741 (E.D. Pa. 2009) (noting that many district court cases "find venue proper where a state policy originated, or is administered" and further noting that "[s]everal decisions in this district have held that the instance of an effect or impact [on a plaintiff in the district] is not sufficient grounds to find venue"); *Chester v. Beard*, No. CIV.A. 07-4742, 2008 WL 2310946, at *8 (E.D. Pa. June 2, 2008) ("In cases such as this one, where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to Section 1391(b)(2) in the district where those policies are developed."); *Stanton-Negley Drug Co. v. Pennsylvania Dep't of Pub. Welfare*, No. CIV.A. 07-1309, 2008 WL 1881894, at *5 (W.D. Pa. Apr. 24, 2008) (finding that "when a complaint is directed at statewide policies and actions of state officials, proper venue is the district in which those policies and actions took place, not the Plaintiff's residence where she felt the effect of those policies.")

To the extent Plaintiffs rely on this Court's Order *General Synod of the United Church of Christ v. Reisinger*, No. 3:14-cv-213, 2014 WL 5871742 (W.D.N.C. filed Oct. 10, 2014) to establish propriety of a venue, [DE 1 ¶ 8], that reliance is tangential, cryptic and difficult to ascertain given that Senate Bill 2 specifically complies with that case and provides a procedure to ensure that a magistrate is available in any given county to perform marriages.  Otherwise, Plaintiffs fail to state any facts to establish that this Court's ruling in *General Synod* is defied, in any way, by Senate Bill 2.

25

Generally speaking, Plaintiffs' Complaint "failed to assist this Court in ferreting out the facts relevant to this [venue] inquiry." *Magic Toyota, Inc. v. Southeast Toyota Distributors, Inc.*, 784 F. Supp. 306, 317 (D.S.C. 1992). Plaintiffs' Complaint does not recite a single event in the Western part of the State sufficient to serve as the predicate for the venue of their action, and absolutely nothing suggests that a substantial part of events giving rise to this litigation took place in this District. As a consequence, Plaintiffs have chosen an improper venue. Pursuant to 28 U.S.C. § 1406(a), this Court should dismiss the matter, or in the alternative, transfer it to a District in which it should have properly been asserted. Likewise, even if this Court were to conclude that the venue is proper in the Western District, for the reasons described above, Defendant respectfully seeks an order transferring this case to the United States District Court for the Eastern District of North Carolina, pursuant to 28 U.S.C. § 1404.

## CONCLUSION

Based on the foregoing arguments and authorities, Defendant respectfully requests the Court to grant his motions to dismiss Plaintiffs' Complaint, and grant such further relief as this Court deems just and equitable.

Respectfully submitted this the 5th day of May, 2016.

ROY COOPER
Attorney General

/s/ Olga E. Vysotskaya de Brito
Ms. Olga E. Vysotskaya de Brito
Special Deputy Attorney General
North Carolina State Bar No. 31846
North Carolina Dept. of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-0185
Facsimile: (919) 716-6759
Email: ovysotskaya@ncdoj.gov

26

/s/ Amar Majmundar
Amar Majmundar
Special Deputy Attorney General
North Carolina State Bar No. 24668
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6821
Facsimile: (919) 716-6759
Email: amajmundar@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on May 5th, 2016, I electronically filed the foregoing paper with the

Clerk of Court by using the CM/ECF system.  All participants in the case are registered CM/ECF

users and will be served by the CM/ECF system.

/s/ Olga E. Vysotskaya de Brito
Ms. Olga E. Vysotskaya de Brito
Special Deputy Attorney General