IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No.: 1:16-cv-54-MOC-DLH

Kay Diane Ansley, Catherine "Cathy" McGaughey, Carol Ann Person, Thomas Roger Person, Kelley Penn, and Sonja Goodman,

        Plaintiffs,

   v.

Marion Warren, in his Official Capacity as Director of the North Carolina Administrative Office of the Courts,

        Defendant.

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTIONS TO INTERVENE

NOW COME Plaintiffs, through undersigned counsel, respectfully filing this brief in opposition to three Motions to Intervene in this case: (1) the Motion filed by North Carolina Magistrate Judge Brenda Bumgarner [Doc. 8]; (2) the Motion filed by current and former North Carolina Magistrate Judges Gayle Myrick, Thomas Holland, and Magistrate Doe [Doc. 12]; and (3) the Motion filed by Phil Berger, President Pro Tempore of the North Carolina Senate, and Tim Moore, Speaker of the North Carolina House of Representatives, on behalf of the North Carolina General Assembly [Doc. 19]. For the reasons set forth below, Plaintiffs respectfully request that all three Motions be denied.

## INTRODUCTION

This lawsuit seeks a declaration that the state legislation known as "Senate Bill 2" violates the Plaintiffs' rights under the Establishment Clause of the First Amendment, and

further, under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. This lawsuit also asks this Court to enjoin the statute as unconstitutional. The Proposed Intervenors all seek to intervene in order to argue that the statute at issue is indeed constitutional. As such, their interests are completely aligned with that of Defendant Warren, who also argues that the law is constitutional and moves to dismiss this action upon the same arguments that the Proposed Intervenors have submitted with their motions to intervene. [Doc. 38]

The Proposed Intervenors, individually and collectively, are adequately represented by Defendant Warren, who has been sued in his official capacity as Director of the North Carolina Administrative Office of the Courts. On May 5, 2016, Defendant Warren filed a motion to dismiss the instant complaint in its entirety, along with a substantial memorandum in support. The Attorney General's Office, on behalf of Defendant Warren, raised four separate arguments:

(1) Lack of personal jurisdiction over Defendant Warren, pursuant to Fed. R. Civ. P. 12(b)(2) and (6)

(2) Plaintiffs' lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1);

(3) Plaintiffs' failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6); and

(4) Improper venue, pursuant to Fed. R. Civ. P. 12(b)(3).

[Doc. 39] Defendant Warren's arguments in favor of dismissal cover entirely those offered by the Proposed Intervenors, specifically, that Plaintiffs lack standing and that the complaint fails to state a cognizable claim.[1]

Under *Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013), there is no reason to allow intervention, at least at this stage. In *Stuart*, the Fourth Circuit upheld the district court's denial

---

[1] Proposed Intervenors Wyrick, Holland and Doe submitted a proposed answer [Doc. 13-5] rather than motion to dismiss with their motion to intervene. As discussed below, this proposed response to Plaintiffs' complaint demonstrates that these Proposed Intervenors have nothing substantive or helpful to add to the litigation.

2

of intervention sought by a group of pro-life medical professionals, by a group of women who have previously undergone abortions, and by pro-life pregnancy counseling centers in a lawsuit challenging the constitutionality of the North Carolina "Women's Right to Know Act." Here, as in *Stuart*, the North Carolina Attorney General is actively seeking to defend the challenged statute, representing the state official with implementing authority under the challenged statute, and raising essentially the same arguments (in addition to others) that the Proposed Intervenors would make. Here, as in *Stuart*, the Proposed Intervenors cannot "mount a strong showing of inadequacy" needed to be entitled to intervention.

## ARGUMENT

The Federal Rules of Civil Procedure provide two avenues for intervention. Under Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can demonstrate "(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation." *Stuart*, 706 F.3d at 349 (citing *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)). If intervention of right is not warranted, a court may still allow an applicant to intervene permissively under Rule 24(b), although in that case the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (internal citations and quotations omitted). District court rulings on both types of intervention are reviewed on appeal for abuse of discretion. *Stuart*, 706 F.3d at 349 (citing *In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991)).

I. **The Proposed Intervenors Do Not Satisfy the Criteria for Intervention As of Right.**

When a State statute is challenged and a proposed intervenor shares a common objective with the State to defend the statute, the proposed intervenor "must mount a strong showing of

3

inadequacy" to be entitled to intervention of right. *Stuart,* 706 F.3d at 352. As the Fourth Circuit has explained, "when a statute comes under attack,[2] it is difficult to conceive of any entity better situated to defend it than the government." *Stuart*, 706 F.3d at 351. As the *Stuart* court reasoned,

> To start, it is among the most elementary functions of a government to serve in a representative capacity on behalf of its people. In matters of public law litigation that may affect great numbers of citizens, it is the government's basic duty to represent the public interest. And the need for government to exercise its representative function is perhaps at its apex where, as here, a duly enacted statute faces a constitutional challenge. In such cases, the government is simply the most natural party to shoulder the responsibility of defending the fruits of the democratic process. As the Supreme Court stated in the related standing context in *Diamond v. Charles,* "[b]ecause the State alone is entitled to create a legal code, only the State has the kind of direct stake" needed to defend "the standards embodied in that code" against a constitutional attack. 476 U.S. 54, 65, 106 S.Ct. 1697, 90 L.Ed.2d 48 (1986) (internal quotation marks omitted).

*Id.* at 351 (noting that "[i]t is after all the government that, through the democratic process, gains familiarity with the matters of public concern that lead to the statute's passage in the first place").

There is a sharp irony in the motions to intervene. The Proposed Intervenors claim that Plaintiffs have no standing to challenge the spending of tax dollars, yet the Proposed Intervenors claim standing to defend legislation that spends tax revenue to further certain magistrates' religious beliefs over their judicial oath. Their proposal to intervene vividly illuminates the validity of Plaintiffs' First Amendment claim and their standing to bring it.

*Stuart* warned against such intervention because of the unnecessary burdens it places on the litigation and the government. "[T]o permit private persons and entities to intervene in the government's defense of a statute upon only a nominal showing would greatly complicate the government's job." *Stuart,* 706 F.3d at 351. The Fourth Circuit explained that:

---

[2] Fourth Circuit cases cited by Proposed Intervenors Myrick, et al., are inapposite, as those cases did not involve challenges to the constitutionality of a statute. *See Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) and *JLS, Inc. v. Pub. Serv. Comm'n of W. Va.*, 321 F. App'x 286 (4th Cir. 2009).

4

Case 1:16-cv-00054-MOC-DLH   Document 40   Filed 05/19/16   Page 4 of 13

> [f]aced with the prospect of a deluge of potential intervenors, the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation. In short, the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view.

*Id*. (internal citations and quotations omitted). As such, the Fourth Circuit joined all other circuits in concluding that where would-be intervenors are seeking to sustain the constitutionality of a statute, they must mount a strong showing of inadequacy. "To hold otherwise would place a severe and unnecessary burden on government agencies as they seek to fulfill their basic duty of representing the people in matters of public litigation." *Id.* at 352.

Proposed Intervenors Moore and Berger seek to intervene as officials on behalf of the entire state legislature, rather than as individuals, but their motion raises the same *Stuart* concerns and requires the same showing of inadequacy. Their motion also raises a legislative immunity issue that Moore and Berger do not address.

As a matter of federal law, legislators are entitled to immunity from suit for legislative actions. *See*, *e.g.*, *Bogan v. Scott–Harris,* 523 U.S. 44, 54 (1998); *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719 (1980); *Dombrowski v. Eastland,* 387 U.S. 82, 85 (1967); *Tenney v. Brandhove,* 341 U.S. 367 (1951); *Burtnick v. McLean,* 76 F.3d 611, 613 (4th Cir. 1996); *Alexander v. Holden,* 66 F.3d 62 (4th Cir. 1995). The same is true under North Carolina common law. *See Northfield Dev. Co. v. City of Burlington*, 136 N.C. App. 272, 282, 523 S.E.2d 743, 749-50, *aff'd in part, review dismissed in part*, 352 N.C. 671, 535 S.E.2d 32 (2000).

That immunity can be waived, *Burtnick,* 76 F.3d at 613, but only if there is an "explicit and unequivocal renunciation of the protection." *United States v. Helstoski,* 442 U.S. 477, 491, (1979) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). In seeking to intervene on behalf of

5

the entire legislature, Berger and Moore have not addressed whether they are waiving immunity or will try to use it as a shield after intervening. And it is unclear if they claim authority to waive immunity for each member of the entire legislative body. The Fourth Circuit has held that the immunity is "personal" and "may be waived or asserted by each individual legislator." *Alexander*, 66 F.3d at 68 n.4.

So it appears that Berger and Moore could only waive immunity as to themselves, presenting an odd prospect whereby they seek to defend the motive and intent of the legislature, but no other legislator can be questioned about the matter. This complication goes beyond the others mentioned in *Stuart,* and highlights the importance of an intervenor making a clear showing of inadequacy in representation to warrant intervention.

To rebut the presumption of inadequacy, the Proposed Intervenors must show either collusion between the existing parties, adversity of interests between themselves and the State Defendants, or nonfeasance on the part of the State Defendant. *See Stuart,* 706 F.3d at 352-54. Here, the Proposed Intervenors can make no such showing. There is no evidence of collusion between or among Plaintiffs and Defendant Warren, who has aggressively moved to dismiss the action on the same reasoning as the Proposed Intervenors, including an argument that the statute protects the religious liberty of the magistrates, in addition to other grounds not raised by the Proposed Intervenors.

And there is no adversity of interest. All of the Proposed Intervenors and Defendant Warren share the common objective – defending the validity of Senate Bill 2. While their particular motives for doing so may be different, their common objective – upholding the constitutionality of the statute – is *identical*. While the Proposed Intervenors may have a

6

particularized interest and fervent desire to protect the statute, "stronger, more specific interests do not adverse interests make." *Stuart*, 706 F.3d at 353. As explained by the Fourth Circuit:

> [W]ould-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all). *Allowing such interests to rebut the presumption of adequacy would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit*.

*Stuart*, 706 F.3d 353 (emphasis added).

Likewise, the Proposed Intervenors cannot show nonfeasance, since Defendant Warren has already filed a Motion to Dismiss the Plaintiffs' complaint with their same legal reasoning.[3]

Again, a review of Defendant Warren's Motion to Dismiss and his brief in support and the proposed motions to dismiss filed by the Proposed Intervenors shows that the Proposed Intervenors' interests are fully represented, as the motions and supporting briefs all make the same arguments for dismissal. Even if Defendant Warren makes the two overlapping legal arguments – lack of standing and failure to state a claim – in a somewhat different manner than the Proposed Intervenors, that does not create adversity of interests or malfeasance.[4] "Disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." *Stuart*, 706 F.3d at 353.

The Proposed Intervenors argue that the Attorney General's Office cannot adequately represent their interests because the Attorney General has expressed personal opposition to Senate Bill 2. But again, it is clear that the Attorney General's Office is defending the

---

[3] Proposed Intervenors' arguments that there are "serious questions" about whether "the State's defense of Senate Bill 2" will be "less vigorous," or even "whether there will be any ongoing defense at all," [Doc. 19 at 25] were made *before* Defendant Warren filed a response to Plaintiffs' lawsuit. In light of the substance of what Defendant Warren filed and his arguments in favor of dismissal, this entire argument by Proposed Intervenors loses all force.

[4] The Proposed Intervenors ask the Court to decide the merits of the lawsuit on their proposed motions to dismiss, urging that the statute on its face constitutionally balances the interest of the State in protecting the free of individual magistrates to *not* uphold the Constitution on religious grounds against the interests of the Plaintiffs in having their fundamental rights recognized and supported by all judges in the state. That assertion – that Senate Bill 2 is constitutional – is the controversy of this lawsuit. This Court cannot entertain a motion to dismiss based on such arguments.

7

constitutionality of Senate Bill 2 with the same arguments that the Proposed Intervenors filed in forecast. [See, e.g., Doc. 8-4] "[T]he duties of the Attorney General in North Carolina as prescribed by statutory and common law include the duty to appear for and to defend the State or its agencies in all actions in which the State may be a party or interested." *Martin v. Thornburg,* 320 N.C. 533, 546 (1987); *see also Fisher-Borne v. Smith*, 14 F.Supp.3d 699, 704 (M.D.N.C. 2014) (setting out the Attorney General's duties). To date in this case, as clearly evidenced by its Motion to Dismiss, the Attorney General's Office is meeting its duty to defend this action—indeed, raising arguments beyond those that the Proposed Intervenors have themselves offered. *See Stuart*, 706 F.3d at 350 (nothing that "the trial court's superior vantage point was evident in this very case when the judge noted the Attorney General's 'detailed, thorough, and substantial brief' … in opposition"). Proposed Intervenors have failed to make any showing, much less a "strong showing of inadequacy," that would entitle them to intervention as of right.

## II. The Proposed Intervenors Do Not Satisfy the Criteria for Permissive Intervention.

Likewise, Plaintiffs respectfully request that this Court deny the Proposed Intervenors' requests for permissive intervention. Under Federal Rule of Civil Procedure 24(b), this Court may permit anyone who "has a claim or defense that shares with the main action a common question or law or fact" to intervene on timely motion. Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3);*; Bussian v. DaimlerChrysler Corp.*, 411 F. Supp.2d 614, 631 (M.D.N.C. 2006).

Permissive intervention should be denied where adding intervenors would complicate discovery in the case and result in possible delay without accruing any benefit to the existing

8

parties. *Stuart*, 706 F.3d at 355. Here, adding Proposed Intervenors—in total, *six* additional parties represented by three separate sets of lawyers—"would consume additional and unnecessary judicial resources, further complicate the discovery process, potentially unduly delay the adjudication of the case on the merits and generate little, if any, corresponding benefit to the existing parties." *Id.* A review of the filings to date by the Proposed Intervenors demonstrates that they are making the same arguments that have already been made in this case by Defendant Warren.

Further, all of the Proposed Intervenors are not without recourse to make any arguments in support of Defendant Warren and Senate Bill 2 as *amici* both in the district court and, if applicable, the Fourth Circuit. As noted by the Fourth Circuit in *Stuart*:

> While a would-be intervenor may prefer party status to that of friend-of-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces our disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto.

*Stuart*, 706 F.3d at 355. And if the Attorney General's Office fails at any time to do its duty to defend the constitutionality of Senate Bill 2, Proposed Intervenors can again seek to intervene.

Lastly, with respect to Proposed Intervenors Wyrick, Holland and Doe, it is worth noting that accompanying their motion to intervene was a proposed answer, rather than a proposed motion to dismiss. This pleading makes clear that Proposed Intervenors Wyrick, Holland and Doe having nothing substantive or helpful to add to the litigation. First, they did not move to dismiss because they cannot add anything to motions already filed. Second, the proposed answer states in paragraph after paragraph that the Proposed Intervenors "lack knowledge or information sufficient to form a belief about the truth of the allegations set forth in [the Complaint]." [Doc.

9

13-5] As such, permitting intervention by these parties would add nothing beneficial to this case and would cause significant, undue delay and a waste of judicial resources.

*United States v. North Carolina*, No. 1:13CV861, 2014 WL 494911 (M.D.N.C. Feb. 6, 2014), provides a recent application of *Stuart* where the district court denied two separate motions to intervene. After the United States filed suit challenging the North Carolina Voter Information Verification Act or House Bill 589 ("VIVA" or "HB 589"), two Proposed Intervenors – Judicial Watch, Inc. and Christina Kelley Gallegos–Merrill, a Republican candidate for office in Buncombe County – separately moved to intervene under Rule 24(a) and, in the alternative, Rule 24(b).

The district court denied the motions under both the "intervention of right" and "permissive" approaches. Under Rule 24(a), the district court held, *inter alia*, that "the Proposed Intervenors fail to demonstrate that [any protectable] interests will not be adequately represented by the State Defendant." *Id.* at *2. The district court further noted that to the extent the State Defendants failed to pursue the Proposed Intervenors' "chosen argument regarding causation," this fact "[did] not foreclose them from arguing the point in the merits briefing, particularly when a lack of causation is generally not regarded to be an affirmative defense that must be pleaded separately." *Id.* at *3. Under Rule 24(b), the district court held, *inter alia*, that the Proposed Intervenors' "were not without recourse, because they could seek leave to file an *amicus curiae* brief both in the district court and in the Fourth Circuit." *Id.* at *4.

## **CONCLUSION**

There is an irony in the motions to intervene. The Proposed Intervenors claim that Plaintiffs have no standing to challenge the spending of tax dollars, yet they claim standing to intervene and defend legislation that spends tax revenue to further certain magistrates' religious

10

beliefs over their judicial oath. Their proposals to intervene vividly illuminate the validity of Plaintiffs' First Amendment claim and their standing to bring it.

For the aforementioned reasons, Plaintiffs, through undersigned counsel, respectfully request that this Court deny the Proposed-Intervenors' respective Motions to Intervene.

Date: May 19, 2016					Respectfully submitted,

**/s/ S. Luke Largess**
N.C. Bar 17486
llargess@tinfulton.com

**/s/ Jacob H. Sussman**
N.C. Bar No. 31821
jsussman@tinfulton.com

**/s/ John W. Gresham**
N.C. Bar No. 6647
jgresham@tinfulton.com

TIN FULTON WALKER & OWEN, PLLC
301 East Park Avenue
Charlotte, NC 28203
Tel: 704-338-1220
Fax: 704-338-1312


**/s/ Katherine Lewis Parker**
N.C. Bar No. 36263
kparker@tinfulton.com

TIN FULTON WALKER & OWEN, PLLC
1213 Culbreth Drive
Wilmington, NC 28405
Tel: 910-228-5200
Fax: 910-401-1155


**/s/ Meghann Burke**
N.C. Bar No. 42209
meghann@brazilburkelaw.com

BRAZIL & BURKE, P.A.
77 Central Avenue, Suite E
Asheville, NC 28801
Tel: 828-350-3812
Fax: 828-258-8972

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of Court by using the CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the CM/ECF system.


Date: May 19, 2016                                                     /s/ Jacob H. Sussman